Allison "Pookie" **FORTIN** and Robert Fortin, Plaintiffs,

v.

**DARLINGTON LITTLE LEAGUE, INC. (AMERICAN DIVISION)**, et al., Defendants.

Civ. A. No. 74–76.

United States District Court, D. Rhode Island.

May 15, 1974.

Stephen J. Fortunato, Jr., of Mc-Kinnon & Fortunato, Pawtucket, R. I., for plaintiffs.

William J. Burke, Jr., Pawtucket, R. I., for Darlington Little League, Inc. and Richard McCluskie, President.

Gerald J. Pouliot, Asst. City Solicitor, City of Pawtucket, R. I., Pawtucket, R. I., for Joseph Dragon and Charles Shea.

Joseph V. Cavanagh, of Higgins, Cavanagh & Cooney, Providence, R. I., for Charles Shea.

## OPINION

DAY, District Judge.

This is a civil action wherein the plaintiffs seek declaratory and injunctive relief against the defendants. Jurisdiction of this Court is invoked under the provisions of 28 U.S.C. § 1343. In their complaint they seek (1) injunctive relief under 42 U.S.C. § 1983 to redress rights secured to them under the Fourteenth Amendment to the Constitution of the United States, and (2) declaratory relief under the provisions of 28 U.S.C. §§ 2201 and 2202.

The plaintiff Allison Fortin is a ten year old girl whose residence is in Pawtucket, Rhode Island. The other plaintiff, Robert Fortin, is the father of said Allison Fortin, and a resident and owner of real estate and personal property located in Pawtucket upon which he pays taxes to said City of Pawtucket.

The defendant Darlington Little League, Inc. (American Division), hereafter "Darlington Little League, Inc." is a nonbusiness corporation organized under the laws of the State of Rhode Island.

The defendant Richard McCluskie is President of said Darlington Little League, Inc.; the defendant Joseph Dragon is the Director of Parks and Recreation for the City of Pawtucket, Rhode Island, and the defendant Charles Shea is the Superintendent of Schools for the City of Pawtucket, Rhode Island.

In their complaint, the plaintiffs allege that the said Allison Fortin has been denied participation in the activities of said Darlington Little League, Inc. solely on account of her sex and that she is otherwise qualified for such participation. They further allege that the defendant Joseph Dragon, in his capacity as Director of Parks and Recreation for the City of Pawtucket makes available, without charge, to said Darlington Little League, Inc. park areas and baseball diamonds for their use, and, further, that he maintains these facilities according to specifications provided by it. They also allege that the defendant Charles Shea, in his capacity as Superintendent of Schools for said City of Pawtucket, provides said Darlington Little League, Inc. with the use of public facilities, public schools, for promotional recruitment and organizational purposes. They further allege in their complaint that the combined activities of the defendants satisfy the requirement of 42 U.S.C. § 1983 that the alleged abridgment of the civil rights of said Allison Fortin is "under color of state law".

Additionally, the plaintiffs allege that the denial by the defendant Darlington Little League, Inc. of participation in its activities to said Allison Fortin, solely because she is a female, amounts to a denial of equal protection of the law as guaranteed by the Fourteenth Amendment to the Constitution of the United States.

The plaintiffs also allege that the actions of the defendants, individually and in concert, deny them equal protection of the laws, in violation of said Fourteenth Amendment because Robert Fortin as a taxpayer to the City of Pawtucket "is entitled to have his female child receive the same benefits and have access to the same places of public accommodation and recreational activities as the male children of other persons resident in and paying taxes to the City of Pawtucket".

Finally, the plaintiffs allege that the conduct of the defendants causes them irreparable harm, that they have no adequate remedy at law and therefore seek a declaratory judgment by this Court

that the actions of the defendants are unconstitutional, and injunctive relief against the defendants prohibiting them from interfering with the attempts of the plaintiff, Allison Fortin, to participate in the baseball activities of the defendant, Darlington Little League, Inc.

Said complaint was filed on April 12, 1974. At the request of counsel for the plaintiffs, and with the assent of counsel for the defendants, I assigned this case to April 25, 1974 for hearing upon the plaintiffs' prayer for a preliminary injunction, pursuant to Rule 65 of the Federal Rules of Civil Procedure. On that date counsel for the parties agreed that said case should be heard on its merits.

At the conclusion of the evidence presented by the plaintiffs, all of the defendants moved for the dismissal of this action on the ground that the plaintiffs had failed to establish sufficient state involvement in said alleged discriminatory activities to fall within the ambit of the constitutional prohibition. Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972); Reitman v. Mulkey, 387 U.S. 369, 87 S. Ct. 1627, 18 L.Ed.2d 830 (1967). This motion was denied by me.

The defendants Dragon and Shea also moved to dismiss this action on the ground that the evidence presented by the plaintiffs established that they had acted solely in a "ministerial" manner in their capacities as public officials. I also denied this motion. The defendant Shea additionally moved to dismiss said action on the ground that the evidence presented by the plaintiffs clearly demonstrated that he had not provided the defendant Darlington Little League, Inc. with the use of school facilities as alleged by the plaintiffs. Since there was no evidence of any such activity by him, I granted said motion and judgment was therefore entered in his favor.

The evidence presented during said trial established the following facts. The defendant Darlington Little League, Inc. is a non-business corporation organized under the laws of the State of Rhode Island, on February 9, 1956. Its stated purpose was for "fostering and guiding the youth of our community through the ages of eight (8) to thirteen (13) in the wholesome recreation of Little League Baseball. . . . ." On July 16, 1964, the Congress of the United States by Public Law 88–378, 78 Stat. 325, incorporated Little League Baseball, Incorporated, a Federal corporation. One of its objects and purposes was "to promote, develop, supervise and voluntarily assist in all lawful ways the interest of boys who will participate in Little League baseball". Under said charter, Congress granted to said corporation the sole and exclusive right to use and to allow or refuse to others the use of the terms "Little League", "Little Leaguer" and the official Little League emblem or any colorable simulation thereof. Said Act also authorizes said corporation to charge and collect membership dues, subscription fees, and receive grants of money or property to be devoted to the carrying out of its purposes, but provides that no part of its income or assets shall inure to any member, officer or director of said corporation.

On some date not established by the evidence, the Darlington Little League, Inc. obtained a charter from said Little League Baseball, Incorporated. Said charter is issued annually for the term of one year on the first of January of each year and expires on the fifteenth day of September of the year for which it is issued. Said charter contains among its provisions the following:

"1. Under terms of this charter, no other league will be franchised within the boundaries established for the current season.

2. The Charter Committee of Little League Baseball, Incorporated, reserves the right to revoke this charter or to suspend any of its privileges, at any time for just cause by giving written notice to the presiding officer of the league. Such revocation shall be effective immediately subject to

later review and action of the Executive Committee."

Local Little League teams are furnished by Little League Baseball, Incorporated with a copy of regulations and rules which they are required to follow in their baseball activities. Regulation IV(a) thereof provides as follows:

"(a) Any boy who will attain the age of 9 years before August 1 and who will not attain the age of 13 years before August 1 of the year in question shall be eligible to compete in Little League Baseball. This means that a boy who will be 13 years old on August 1 or later is eligible to play that year, a boy who will be 13 years old on July 31 or earlier, will not be eligible for either local league play or tournament play at any time during the calendar year in question."

Rule IV(i) thereof provides as follows:

"Girls are not eligible to try out or to play on Little League teams."

NOTE. The purpose of this ruling is not discriminatory on the basis of sex. Considerable research and studies have been made into physiological differences that exist between male and female children at the age of Little League Baseball participants. The results indicate that it is not a safe practice for girls to be included as players on the same teams as young boys in a competitive contact sport such as baseball."

Said rules also provide that accident insurance coverage must be carried by all Little Leagues chartered by said Little League Baseball, Incorporated. All players on the regular roster, as well as the manager, coaches and umpires are thus afforded protection. Similar coverage must be also provided for boys who participate in the minor or farm programs so-called. As a result of having most leagues enrolled in the Little League Blanket Accident Insurance Plan, local leagues are able to obtain minimum rates and maximum benefits.

The annual dues payable by a member of said Little League Baseball, Incorporated is $9.50 for each of its teams. This charge includes the cost of said accident insurance coverage for its players on its regular roster as well as the managers, coaches and umpires of its games. Members of said League also receive discounts on baseball equipment. Monies for the support of the activities of said Darlington Little League, Inc. are raised by donations, raffles and food sales. The coaches of its teams are volunteers, serving without compensation. No monies are contributed to it by the City of Pawtucket, but said City does permit its teams to use regularly baseball diamonds located in the Slater Memorial Park, a public park in said city without any charge for the use thereof. The defendant Joseph Dragon, in his capacity as Director of Parks and Recreation, makes said baseball diamonds available for the use of said teams at specific times upon their written application for such use. In addition, in his official capacity, he maintains said baseball diamonds in accordance with specifications furnished to him by the defendants Darlington Little League, Inc. and Richard McCluskie relating to base paths and pitching mounds. The cost of said maintenance and care is paid by the City of Pawtucket. The defendant Joseph Dragon also, in his official capacity, makes said baseball diamonds available to other organizations of the City of Pawtucket without charge.

It is conceded by the defendants, Darlington Little League, Inc., and Richard McCluskie, its President, that the application of the plaintiff Allison Fortin to participate in said try-out was denied on the ground of her sex. The latter expressed the fear that she would be endangered physically if allowed to compete with boys in organized baseball.

There was also conflicting testimony by medical experts as to the risk of severe personal injuries to a girl of the age of said Allison Fortin by her participation in organized baseball. At the conclusion of the evidence I reserved judgment.

As hereinbefore recited, the plaintiffs invoke the jurisdiction of this Court under the provisions of 28 U.S.C. § 1343 which is the jurisdictional analog of 42 U.S.C. § 1983 which creates a civil action for the violation of an individual's civil rights. Said Section 1983 provides as follows:

*"Civil action for deprivation of rights* Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

■ Primarily, a cause of action under Section 1983 exists only where the plaintiff establishes both that the defendant's action is "under color of any statute, ordinance, regulation, custom or usage, of any State" and that such action subjects the plaintiff "to the deprivation of any rights, privileges, or immunities secured by the Constitution". Where, as in this case, the right allegedly infringed is the right to equal protection of the law guaranteed by the Fourteenth Amendment, the deprivation must take the form of "state action". Lavoie v. Bigwood, 457 F.2d 7, 9 (1st Cir. 1972).

In this case it is uncontradicted that the plaintiff Allison Fortin has been denied the privilege of participating in Little League baseball solely because she is a girl. This denial, based upon sex, is the policy and practice of the defendant Darlington Little League, Inc. and said Little League Baseball, Incorporated from which it holds a charter. It is clear that the "custom and usage" of which plaintiffs complain is one adopted by private entities and not the result of governmental fiat. This fact alone does not resolve the issue of the sufficiency of state action, for there is some evidence that the state is involved to some degree in the activities of said Darlington Little League, Inc. Plaintiffs contend that this limited involvement is sufficient to satisfy the requirements of said Section 1983 of Title 42 U.S.C.

■ In using the term "state action" I refer to the activities and policy of both state and municipal governmental officials and agencies. It is a well recognized principle of law that municipalities are simply creations of the state and may be abolished by it. Thus the conduct of municipalities and their officials is for purposes of constitutional consideration conceived as that of agents of the state. It is well settled that the conduct of municipal officials under certain circumstances may be sufficient to satisfy the "state action" requirements of said Section 1983 and said Fourteenth Amendment. See Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed. 2d 492 (1962). This principle of regarding conduct which ostensibly is municipal in character as ultimately founded in state power was applied by the Supreme Court in Burton v. Wilmington Parking Authority. 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1962). It has also been applied where, as alleged in this case, the discrimination is practiced by a private entity but with sufficient involvement of the state by and through one of its municipalities to render said private entity subject to an action under the provisions of said Section 1983. Adickes v. S. H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

The precise question before this Court with respect to "state action" is whether (1) the grant by the State of Rhode Island of corporate status as a non-business corporation to the defendant Darlington Little League, Inc., and (2) the state's involvement via the actions of employees of the City of Pawtucket and the use of public funds and facilities of the municipality to provide said defendant Darlington Little League, Inc. with services and facilities to carry on its baseball program constitute "state action".

No clear rule exists for the determination of whether there has been sufficient state involvement in alleged private discrimination to meet the "state action" requirement of the Fourteenth Amendment. In Burton v. Wilmington Parking Authority, supra, the Supreme Court held at page 722:

"Only by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance."

Where the alleged discrimination is practiced by a private entity, the United States Court of Appeals for the First Circuit in McQueen v. Druker, 438 F.2d 781 (1st Cir. 1971) said at page 784:

"We view our task of 'sifting facts and weighing circumstances' as one to be done to the end of determining when it is fair and reasonable to hold an individual subject to the same duties of observance of constitutional rights as are imposed on a governmental unit."

As hereinbefore recited, the baseball diamonds utilized by the defendant League are owned by the City of Pawtucket and are available for public recreation. The defendant Joseph Dragon, in his capacity of Director of Parks and Recreation, maintains and cares for these baseball diamonds according to specifications established by said defendant Darlington Little League, Inc. pertaining to base paths and pitching mounds and makes said facilities available to the defendant Darlington Little League, Inc. and Richard McCluskie at specific times for practice and games. The evidence further shows that a new baseball field is now being prepared by the City of Pawtucket according to printed' plans and specifications by said Little League Baseball, Incorporated. Although the lay-out of these fields in accordance with said specifications does not make them usable only by Darlington Little League, Inc., it is clear that adherence to said specifications is primarily for the benefit of that corporation and only incidentally for other groups of youths and the general public. The testimony of the defendant Joseph Dragon indicated that other groups required diamonds of different dimensions, but there was no evidence that the City of Pawtucket dedicated its resources to these groups in a scale approaching that afforded to Darlington Little League, Inc. The above facts indicate that a significant proportion of said Slater Memorial Park baseball diamonds are prepared to meet the needs of Darlington Little League, Inc. and other Little League groups in the area. The defendant Richard McCluskie testified that Darlington Little League, Inc. conducted its baseball programs on five evenings each week and on Saturdays during the baseball season. As a result of this heavy schedule, it is clear that the general public is often precluded from utilizing said facilities. Furthermore, it is implicit from the testimony of Joseph Dragon concerning the interest of the City of Pawtucket in the operation of baseball programs for its youth that to a certain extent the Darlington Little League, Inc., by its recreational program is carrying on a governmental function. This inference is supported by the testimony of the defendant Richard McCluskie concerning the civic purpose of the program of said Darlington Little League, Inc. See McQueen v. Drucker, supra, 438 F.2d at 784.

Although there was no evidence that the City of Pawtucket, by its agent, was in any way involved in the formulation of the "no girls" policy of said Darlington Little League, Inc., I find that there is "significant" state involvement in the activities of said Darlington Little League, Inc. Accordingly, I conclude that there is sufficient state involvement to confer jurisdiction upon this Court over the plaintiffs' action under the provisions of the Fourteenth Amendment and 42 U.S.C. § 1983.

As hereinbefore recited, the application of said Allison Fortin was denied solely on the ground of her sex. The expert medical testimony presented

during said trial convinces me that there are material physical differences between boys and girls in the 8 to 12 age bracket regarding musculature, bone strength, strength of the ligaments and tendons, pelvic structure, gait and reaction time, and that these differences could undoubtedly result in serious injuries to girls in said age bracket who participated in a contact sport such as baseball. This Court takes judicial notice that baseball is a contact sport and that at times such contacts are violent. Witnesses for the defendant, who have had a great deal of experience with Little League baseball, expressed the opinion that girls in said age bracket would suffer personal injuries of a possibly serious nature as a result of such physical contacts.

The goal of safety is a legitimate concern of the defendant Darlington Little League, Inc. and this Court cannot say that its rule excluding girls between the ages of 8 to 12 years from participating in said baseball games is not rationally related to the effectuation of that reasonable goal. Magill v. Avonworth Baseball Conference et al., 364 F. Supp. 1212 (W.D.Pa.1973).

Plaintiffs' reliance upon Brenden v. Independent School District 742, 477 F. 2d 1292 (8th Cir. 1973) is without warrant. That case is clearly distinguishable on its facts from this case. It did not involve a contact sport such as baseball and the Court specifically reserved its decision on the question of female participation in contact sports.

In the case of Morris v. Michigan State Board of Education, 472 F.2d 1207 (6th Cir. 1973), also cited by the plaintiffs, the Court of Appeals recognized the propriety of a distinction based upon sex in contact sports. In that case the District Court had issued a preliminary injunction invalidating Rule 5 of the Michigan High School Athletic Association which prohibited girls from engaging in interscholastic activities "when part or all of the membership of one or both of the competing teams is composed of boys. [sic]." Upon appeal, the Court of Appeals remanded said preliminary injunction to the District Court for modification by entering the word "noncontact" between the words "interscholastic" and "athletics" where they appeared in said preliminary injunction.

It is well settled that a classification based upon sex, race, alienage and national origin is inherently suspect and must therefore be subjected to close scrutiny. Frontiero et vir v. Richardson, Secretary of Defense, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973); Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971).

Applying that standard to the facts in this case, it is my opinion that sex is a rational distinction where a contact sport is involved and the risk of serious personal injury to the plaintiff Allison Fortin by her participation therein is a strong probability. I find and conclude that the defendants have not illegally deprived either of the plaintiffs of any of their constitutional rights.

Accordingly, the plaintiffs are not entitled to the relief which they seek.

Judgment will be entered in favor of the defendants.