David PONCE, Plaintiff, Appellee,

v.

BASKETBALL FEDERATION OF the COMMONWEALTH OF PUERTO RICO, et al., Defendants, Appellants.

No. 84–1705.

United States Court of Appeals, First Circuit.

Argued Feb. 5, 1985.

Decided May 1, 1985.

12. *See* 20 C.F.R. § 404.1527.

Marcos A. Ramirez, Hato Rey, P.R., with whom Marcos A. Ramirez Lavandero, Hato Rey, P.R., was on brief, for defendants, appellants.

Ralph Vallone, Jr., Hato Rey, P.R., with whom Carmen Nelida Olmeda and Neil Fleisher were on brief, for plaintiff, appellee.

Before COFFIN, Circuit Judge, WISDOM,[*] Senior Circuit Judge, and BOWNES, Circuit Judge.

COFFIN, Circuit Judge.

The question in this case is whether appellants' conduct constituted state action under the Fourteenth Amendment and 42 U.S.C. § 1983. Appellee David Ponce was suspended by the Superior League from playing in its basketball tournament due to non-compliance with the eligibility rules of appellants, the Basketball Federation of the Commonwealth of Puerto Rico (the Federation) and its Board of Governors, and the Superior Basketball League of Puerto Rico (the Superior League) and the franchise holders of its teams. The rules require each player wishing to participate in the Federation or Superior League to establish Puerto Rican affiliation through birth, descent or adoption, or to establish a three year residency in Puerto Rico prior to any tournament.

Ponce alleges that enforcement of the eligibility rules against him, an American citizen, unconstitutionally deprives him of his rights under the Fourteenth Amendment. Ponce sought damages and injunctive relief in the district court under 42 U.S.C. § 1983. The district court granted the preliminary injunction finding that appellants' activity with regard to Ponce constituted state action, and that application of the eligibility rules against an American citizen is an equal protection violation. For reasons stated below, we vacate the order of the district court granting the preliminary injunction for failure to prove state action under 42 U.S.C. § 1983.

The Basketball Federation of Puerto Rico is a private sporting organization established to oversee and direct amateur basketball in Puerto Rico. The Federation is a member of the International Amateur Basketball Federation and the Puerto Rican Olympic Committee and is comprised of several private basketball leagues, including the Superior League. The Governing Board of the Federation includes, among others, the director of each league. The current president of the Federation, Mr. Genaro Marchand, is the director of the Superior League.

The Superior League, according to its by-laws, is a "non-profit organization affiliated to the Puerto Rico Basketball Federation dedicated to promote, organize and develop basketball in the Island of Puerto Rico." The League's sixteen franchise teams, representing different municipalities, participate in an annual tournament, and it was in response to appellee's application to play for one of these teams in the 1984 tournament that he was found ineligible.

Only players from Federation-approved leagues are selected to play in the international basketball tournaments and on Puerto Rico's Olympic Basketball Team. In order to comply with international eligibility rules, the League requires each player to prove either that he or a parent was born in Puerto Rico, or that he has resided there for the prior three years.

David Ponce based his eligibility to play basketball with the Ponce Leones basketball team on the mistaken belief that his

---

[*] Of the Fifth Circuit, sitting by designation.

adoptive father was born in Puerto Rico.[1] On July 15, 1984, Ponce was suspended from the team and the tournament when it was discovered that his adoptive father was born in California and not in Puerto Rico. All of the games already won by the team were forfeited.

After Ponce filed his claim in federal court and moved to enjoin his suspension, appellants filed a motion to dismiss, limited to the jurisdictional question of whether there was state action and whether appellants acted "under color of state law" as required under 42 U.S.C. § 1983. The district court held a two-day hearing, denied appellants' motion, and enjoined them from declaring Ponce ineligible to play in the Superior League tournament. The court further ordered appellants to reinstate Ponce's status as a player in the League, to reinstate the games won by his team, and to readjust the Leone's win-loss record. The court subsequently denied a motion for stay of the preliminary injunction, rejecting appellants' argument that enforcement of the court order caused them irreparable harm.

### Discussion

Ponce alleges that the actions and policies of appellants in promulgating the eligibility rules and in arbitrarily enforcing those rules against him discriminated against him on the basis of nationality in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment. Because neither § 1983 nor the Fourteenth Amendment reach private actions, the key issue before us is whether the decision by the nominally private appellants to revoke Ponce's right to play in the League constituted action which may be "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 2754, 73 L.Ed.2d 482 (1982); *Mendez v. Belton*, 739

F.2d 15, 17 (1st Cir.1984).[2] The state action inquiry is "necessarily fact-bound", *Lugar v. Edmondson Oil Co.*, 457 U.S. at 939, 102 S.Ct. at 2755, for "[o]nly by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance." *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 722, 81 S.Ct. 856, 860, 6 L.Ed.2d 45 (1961).

■ We are guided in our analysis of the degree of state control and involvement in this factual setting by the Supreme Court's recent pronouncements on the state action issue. The following inquiries are relevant: (1) whether there was an elaborate financial or regulatory nexus between appellants and the government of Puerto Rico which compelled appellants to act as they did, (2) an assumption by appellants of a traditionally public function, or (3) a symbiotic relationship involving the sharing of profits. *See Blum v. Yaretsky*, 457 U.S. 991, 1004–1005, 102 S.Ct. 2777, 2785–2786, 73 L.Ed.2d 534 (1982); *Rendell-Baker v. Kohn*, 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982); *Gerena v. Puerto Rico Legal Services, Inc.*, 697 F.2d 447, 449 (1st Cir.1983).

#### Nexus Analysis

■ Ponce alleges that Puerto Rico's extensive regulation of amateur basketball and its financial support of the Federation and League teams establish a "sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974), cited in *Blum v. Yaretsky*, 457 U.S. at 1004, 102 S.Ct. at 2785. Under the "nex-

1. Under the League rules:
   "[A] person born outside of Puerto Rico, who has been legally adopted by a person born in Puerto Rico, shall be eligible five (5) years after having been adopted, according to judicial judgment."

2. In *Lugar v. Edmondson Oil Co.*, the Supreme Court noted that the requirements of state ac-

tion under the Fourteenth Amendment and the requirement of "under color of law" under 42 U.S.C. § 1983 are so connected that they may be identical. 457 U.S. at 928, 102 S.Ct. at 2749. Because we have concluded that there is no state action, we need not address the distinctions, if any, between the two requirements.

us" analysis a state "can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Blum v. Yaretsky,* 457 U.S. at 1004, 102 S.Ct. at 2785; *Rendell-Baker v. Kohn,* 457 U.S. at 840, 102 S.Ct. at 2771. As we stated in *Gerena v. Puerto Rico Legal Services, Inc.,* 697 F.2d at 450:

> "[T]he party seeking to establish that action of a private party violated the Constitution must be able to point to the specific act or actions of the government which in fact motivated the private action."

We conclude that the criteria established by the Supreme Court preclude a finding of state action where there is no evidence that the government encouraged or affirmatively induced appellants' conduct.

In 1980, Puerto Rico established the Sports and Recreation Department (the Department) and gave the Secretary of the Department (the Secretary) the power to "regulate, promote and supervise all public and private, professional or amateur sports and recreational activities that are held in Puerto Rico." P.R.Laws Ann. tit. 3, § 442f(a).[3] The Secretary has authority under the statute to create a committee to arbitrate disputes connected with the qualifications and rights of athletes in organized sports. Regulations were promulgated by the Secretary's predecessor to set up an "Amateur Sports Council of Puerto Rico" to authorize and accredit amateur sports teams and to guarantee that those teams engage in no discriminatory or unfair practices. However, according to the testimony adduced at the hearing below, none of the committees or practices enumerated in the regulations have been implemented by the Department; there is no amateur sports division, arbitration committee, sports council, or accreditation procedure.

The Secretary testified that he is not involved in the day to day management of the amateur sports organizations in Puerto Rico and that his primary concern since joining the Department is to organize a committee to handle dispute resolution. Acknowledging that the ultimate authority to oversee amateur sports resides with his office, he has done nothing to intervene in the management of amateur sports because, in his estimation, the private federations are operating smoothly. The Secretary further testified that he never reviewed or approved the Superior League's eligibility rules, had nothing to do with the promulgation of those rules (which occurred prior to his appointment as Secretary), nor did he in any way participate in individual determinations as to eligibility. He did testify, however, that he personally believed that a restrictive eligibility rule is necessary to guarantee an all Puerto Rican basketball team for international competition.

The district court concluded from these facts that the Sports and Recreation Department delegated to the Federation and the League its duty to regulate the sport of basketball in Puerto Rico and thereby authorized and significantly encouraged appellants' conduct. Relying on *Burton v. Wilmington Parking Authority,* 365 U.S. at 725, 81 S.Ct. at 862, the court found that:

> "[b]y its inaction, the Department, and through it the Commonwealth, has not only made itself a party to the refusal of David Ponce's playing, but has elected to place its powers and prestige behind the admitted discrimination.

> The government should be responsible for failing to act where it should act. Had the Commonwealth decided to provide the service itself, its conduct would have been measured against constitutional standards. The Commonwealth should not be permitted to avoid constitutional requirements by delegating its

---

**3.** "All the functions, powers, duties and obligations of the Public Recreation and Parks Administration [were] ... transferred to the Depart-

ment of Sports and Recreation ... eff[ective] June 13, 1980." P.R.Laws Ann. tit. 3, § 442d.

statutory duty to a private entity. *See, e.g., McQueen v. Drucker,* 438 F.2d 781 (1st Cir.1971)."

We believe that the district court incorrectly characterized the requirements for state action when it found that the government inaction evidenced in this case is equivalent to government approval and encouragement of the questioned action. In *Blum v. Yaretsky,* the plaintiff challenged a hospital's decision to transfer patients among health care facilities claiming that decisions of this type were encouraged under the extensive state and federal regulations governing nursing homes. Despite the existence of regulations which specifically addressed the issue of transferring patients, the Court concluded that "the challenged action of the regulated entity ... may be fairly treated as that of the State itself ... only when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains." *Blum v. Yaretsky,* 457 U.S. at 1004, 102 S.Ct. at 2785. In *Blum,* plaintiffs failed to show that the state engaged in decision making of the type in question and the state, therefore, could not be held responsible for the hospital's particular decision about a particular patient. *Id.* at 1008, 102 S.Ct. at 2788. The Court concluded that:

"[m]ere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives under the terms of the Fourteenth Amendment." *Id.* at 1004–1005, 102 S.Ct. at 2786.

However, where it can be shown that the activities of private parties were compelled or influenced by government regulation, private action can be attributed to the state. *See Rendell-Baker v. Kohn,* 457 U.S. at 841, 2771; *Gerena v. Puerto Rico Legal Services, Inc.,* 697 F.2d at 450.

Ponce proferred evidence which, while giving the illusion of establishing the requisite nexus, failed to identify any affirmative state action as required under *Blum v. Yaretsky.* There is no indication in the record that the state motivated or encouraged appellants' conduct through legislative means. In contrast to *Blum v. Yaretsky,* there was no overriding state policy regarding eligibility rules for amateur sports in Puerto Rico under which appellants were acting.

In addition, the Secretary's articulated satisfaction with the status quo simply did not go beyond "[m]ere ... acquiescence in the initiatives of a private party", *Blum v. Yaretsky,* 457 U.S. at 1004, 102 S.Ct. at 2786, to motivate or compel appellants' actions. Had Ponce produced evidence of pre-litigation action taken by the state showing that the Secretary shared responsibility for the promulgation or enforcement of the eligibility standards or that he officially or formally adopted or approved them, we might well have a different case. The Secretary's sole involvement in this controversy was an attempt at mediation between the parties. This minimal involvement in the controversy did not require the Secretary either to reach the merits of the case or to enforce the eligibility requirement.

Neither is the Secretary's failure to occupy the field of amateur sports the type of governmental inaction which warrants judicial intervention. We are not faced with a refusal by the government to assume authority over a matter uniquely within its domain to regulate. Suppose, for example, that a municipality entered into a contractual relationship with a private developer to manage a public housing project with the result that only white individuals were accepted as tenants. Were the state or town to do nothing when confronted with the discriminatory screening policy, we might well conclude that the state's total abstention from the performance of its legislative function would be equivalent to state approval of private action. *See McQueen v. Druker,* 438 F.2d 781 (1st Cir.1971) (state action found where government contracted with private persons to carry out its duty of providing for urban renewal displacees). But here the Secretary has done nothing more than pass up the opportunity to assume a function which is typically per-

formed by private parties, see *infra*. Significantly, no one has previously objected to the Secretary's abstention as arbitrary, discriminatory or violative of due process. We are hard pressed to understand why, if appellee truly believed that the Secretary's inaction contravened the legislative mandate, appellee failed to name the Secretary as a party to this action.[4]

Ponce failed to prove in this proceeding that the government's inaction was itself an affirmative governmental decision, or that in abdicating its authority the government went against its legislative mandate. To allow a finding of state action to stand when it has been shown only that the government acquiesced in the conduct of private parties would push the concept of state action far beyond present bounds. Such an expansive reading of the doctrine would make state officials accountable for a myriad of private decisions over which they have no direct authority and might lead to the unwarranted result that they would be hesitant to express any opinions with regard to private matters and would seek revocation of their regulatory authority.

In an effort to demonstrate the existence of the requisite "nexus", Ponce makes much of appellants' financial dependence on the state. Yet the facts adduced at the hearing before the district court suggest that neither the League nor the Federation receive substantial financial subsidies from the Puerto Rican government or from the municipalities. In *Blum v. Yaretsky*, 457 U.S. at 1011, 102 S.Ct. at 2789, the Supreme Court concluded that decisions by a nursing home to transfer patients to a different level of care did not constitute state action despite the fact that the state subsidized the operating costs of the nursing homes and paid the medical expenses of more than 90 percent of the patients. Likewise, in *Rendell-Baker v. Kohn*, 457 U.S. at 840, 102 S.Ct. at 2771, a school board's decision to terminate a teacher's employment was not attributed to the state even though virtually all of the school's income came from government funding.

In contrast, the League and Federation are private institutions which derive most of their income from ticket sales and television contracts. The Federation and the League nonetheless receive some government assistance. Direct financial support from the government is limited to the provision of office space and payment of utilities and maintenance. Several localities also provide their franchise teams with free bus service and equipment. Indirect support comes either through the Olympic Committee, which is authorized by the Puerto Rico legislature to disperse $500,000 from its annual budget among the affiliated sports federations for them to pass on, as they see fit, to the individual leagues, teams or players, or through beneficial contracts for the use of government stadiums. The Superior League plays all of its games in government stadiums, some of which are provided to the teams free of charge or at below-market rates. As part of the rental agreements, the government pays the utilities, security and clean-up costs associated with the games.

In *Rendell-Baker v. Kohn*, and in *Blum v. Yaretsky*, the degree of government funding was substantially greater than the financial support afforded appellants by the government of Puerto Rico. Yet in neither case did the Supreme Court find that the receipt of public funds converted private decisions into actions of the state. Therefore, absent proof that these subsidies contributed to appellants' decision to enforce the eligibility requirements, this

---

4. To the extent that Ponce might argue that the Secretary's statements on the stand reflect an official policy decision to encourage Puerto Rican participation in the Olympics, we note the following. First, the regulations do not require the Secretary to promulgate eligibility rules. Second, there are no facts on the record to suggest that his statements reflected anything more than a personal belief. And third, even if there was a Department policy, the Secretary was not shown to have promulgated the League's eligibility rules or to have regularly engaged in decision making regarding eligibility requirements. *See Blum v. Yaretsky*, 457 U.S. at 1008, 102 S.Ct. at 2788.

level of financial support is not enough to constitute state action. *Gerena v. Puerto Rico Legal Services*, 697 F.2d at 450.

*Public Function Analysis*

Ponce claims that appellants are state actors because, in overseeing, promoting and regulating amateur basketball, appellants have assumed a responsibility that is traditionally a public function reserved to the state. In other words, Ponce argues that the state, in delegating its traditional responsibilities to appellants, has effectively transferred its authority to the private parties named in this action. *Jackson v. Metropolitan Edison Co.*, 419 U.S. at 352, 95 S.Ct. at 454.

The Supreme Court recently discussed the "public function" analysis of state action in *Rendell-Baker v. Kohn*, 457 U.S. at 842, 102 S.Ct. at 2772;

> "[O]ur holdings have made clear that the relevant question is not simply whether a private group is serving a 'public function.' We have held that the question is whether the function performed has been 'traditionally the *exclusive* prerogative of the State.'" (citations omitted).

In *Rendell-Baker* the Court concluded that although the education of maladjusted high school students is a public function for which the state intends to provide services at the public expense, that "legislative policy choice in no way makes these services the exclusive province of the State.... That a private entity performs a function which serves the public does not make its acts state action." *Id.*

If education is not traditionally an exclusive function of the state, *id.*, then *a fortiori*, neither is the regulation of amateur sports. Amateur sports groups commonly receive assistance from the state in the form of state-maintained or state-operated playing fields, but that it has traditionally been the state's sole province to decide the number of teams, the range of sports, eligibility requirements, and many other details is not a supportable assertion. That the state or municipality may assist the cause of amateur sports, through regulation or financial support, does not make the state's role one traditionally and exclusively reserved to it. *Arlosoroff v. National Collegiate Athletic Association*, 746 F.2d 1019, 1021 (4th Cir.1984).

*Symbiotic Relationship*

The district court found that there was state action in this case due to the "symbiotic relationship" between the Federation and the League, on the one hand, and the government of Puerto Rico, on the other. The court found that the arrangement for the use of the sports facilities "confers on each an incidental variety of mutual benefits." Slip op. 21–22.

The Supreme Court addressed the symbiotic relationship analysis of state action in *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). In that case, the state leased public property to a private restaurant owner and the Court concluded that the actions of a private party are attributable to the state only if the government "has so far insinuated itself into a position of interdependence with [the private entity] that it must be recognized as a joint participant in the challenged activity...." *Id.* at 725, 81 S.Ct. at 862; *Gerena v. Puerto Rico Legal Services, Inc.*, 697 F.2d at 451. What was crucial in *Burton* was not merely the contract between the private party and the government to lease property, but the fact that the restaurant "constituted a physically and financially integral ... part of the State's plan to operate its project as a self-sustaining unit." *Burton v. Wilmington Parking Authority*, 365 U.S. at 723–4, 81 S.Ct. at 861. The restaurant's racially discriminatory policy was acknowledged to be indispensable to the success of the government's joint venture with the private party.

No similar degree of interdependence has been shown in this instance. The government has a contractual relationship with the League governing the use of the former's stadiums. Under the terms of these

contracts, Puerto Rico's Recreational Development Company (RDC), a public corporation in charge of the administration of public recreational facilities, receives twenty-five cents for each admission ticket sold. The teams also pay RDC $1,600 for the exclusive right to place advertising boards in a stadium and $350 for each game to be televised on government basketball courts. The state claims to regularly lose money in the operation of the stadiums.

In *Rendell-Baker v. Kohn,* 457 U.S. at 843, 102 S.Ct. at 2772, the Supreme Court stressed that the key factor in determining the existence of a symbiotic relationship is whether the state profited from the discriminatory activity.[5] Here, it cannot be deduced or inferred from the evidence that the government's relationship with the appellants was equivalent to a joint economic venture, or that the government relied on appellants' eligibility requirements to reap greater financial benefits. To conclude otherwise would be to hold the government accountable for the actions of all private entities to whom it rents space. This result is clearly absurd.

Other arguments raised by appellee lack sufficient merit to warrant discussion. In conclusion, we cannot say that appellants' treatment of David Ponce is "fairly attributable to the State." *Lugar v. Edmondson Oil Co.,* 457 U.S. at 937, 102 S.Ct. at 2754. Accordingly, because appellee has failed to show likelihood of success on the merits, the order of the district court granting the preliminary injunction is

*Vacated.*

---

**5.** Appellee's reliance on *Fortin v. Darlington Little League, Inc.,* 514 F.2d 344 (1st Cir.1975) is, therefore, misplaced. In *Fortin,* we found that there was evidence of a symbiotic relationship between the Little League and the city of Pawtucket because the Little League nightly occupied six of eight city-kept baseball diamonds and took on a semi-official character in the public's eye. The city laid the diamonds to the Little League's specifications, and accommodated its practice and playing schedule to the virtual exclusion of other members of the community. *Fortin* was decided before the Supreme Court fully articulated the requirement that an economic incentive provide the basis for a symbiotic relationship. *Rendell-Baker v. Kohn,* 457 U.S. at 843, 102 S.Ct. at 2772. Even so, we note that the evidence of accommodation by the government or municipalities of Puerto Rico to the specific needs of the Federation and League is significantly less than in *Fortin* and does not warrant a finding of state action. For example, the League shares the stadiums with other teams and other sports, the courts were not constructed for the exclusive benefit of the Federation, nor were they laid out or maintained to the Federation's specifications.