**Deborah STONE; Frank Reichel, III; Teresa Polenz; Hanover Review, Inc.**

**v.**

**DARTMOUTH COLLEGE; Dartmouth College Committee on Standards; David T. McLaughlin, in his capacity as President of Dartmouth College; Edward J. Shanahan, in his capacity as Dean of Dartmouth College; Edward Bradley, Professor, in his capacity as Chairman of the Dartmouth College Committee on Standards and as an individual; Matthew Marshall, III, in his capacity as the General Manager of the Hanover Inn, a corporation wholly owned by Dartmouth College.**

**Civ. No. 87–284–D.**

United States District Court, D. New Hampshire.

March 1, 1988.

K. William Clauson, Hanover, N.H., David B. Rivkin, Jr., Washington, D.C., for plaintiffs.

Carol Ann Conboy, Manchester, N.H., for defendants.

## ORDER

DEVINE, Chief Judge.

At approximately 3:00 a.m. on January 21, 1986, a group of students at Dartmouth College ("Dartmouth") in Hanover, New Hampshire, dismantled with sledgehammer, crowbar, and hammer several "shanties" erected on the Dartmouth Green by other students protesting Dartmouth's investment in companies doing business in South Africa. This litigation focuses on subsequent disciplinary proceedings taken by Dartmouth and the other named defendants—persons associated with the college—against the individual plaintiffs for their role in planning and physically directing the shanty destruction. At all times rele-

vant to this action, the individual plaintiffs were students at Dartmouth and members of the editorial board of the *Dartmouth Review ("Review")*, a publication of plaintiff Hanover Review, Inc., which, except in name, is not associated with Dartmouth College.

Additionally at issue is action taken against plaintiff Deborah Stone and the *Review* in response to a "sting" operation conducted by *Review* members in May 1987 against the Hanover Inn ("Inn"), a business owned by Dartmouth. In an attempt to expose the Inn's alleged sale of alcoholic beverages to underage students, the *Review* sent underage "undercover agents" to the Inn for the purpose of ordering alcoholic beverages. The agents allegedly succeeded in being served, and, following publication of an article in the *Review* exposing the Inn's purported scofflaw activity, the Inn advised Stone and other *Review* members that they would no longer be admitted.

Plaintiffs allege that the college's disciplinary proceedings following the shanty incident and the Inn's actions following the sting operation violated rights guaranteed them by the United States Constitution, the New Hampshire Constitution, and New Hampshire common law. Based thereon, plaintiffs bring suit for damages and injunctive relief pursuant to 42 U.S.C. § 1983 and the Court's power of pendent jurisdiction. Defendants move to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6), Fed.R.Civ.P., contending that the Court lacks subject matter jurisdiction and that plaintiffs fail to state a claim upon which relief can be granted.

When faced with a motion to dismiss for lack of subject matter jurisdiction, Rule 12(b)(1), Fed.R.Civ.P., the party asserting jurisdiction has the burden to establish by competent proof that jurisdiction exists. *O'Toole v. Arlington Trust Co.*, 681 F.2d 94, 98 (1st Cir.1982); C. Wright & A. Miller, 5 *Federal Practice and Procedure* [hereinafter 5 *Wright & Miller* ] § 1350, at 555 (1969 and Supp.1987) (and citations therein). The district court may not make presumptions or draw argumentative inferences from the pleadings; however, the claims of the complaint are construed broadly and liberally, and all uncontroverted factual allegations are accepted as true. 5 *Wright & Miller* § 1350, at 551–52 (citing, *e.g.*, *Norton v. Larney*, 266 U.S. 511, 515–16, 45 S.Ct. 145, 147, 69 L.Ed. 413 (1925)). Either party may use affidavits or other exhibits to support its contentions. *Id.* § 1350, at 549–50. In the instant case, the issues are clear, and the matter is capable of resolution without resort to oral hearing; accordingly, the Court rules on defendants' motion on the documents as filed. *O'Toole, supra*, 681 F.2d at 98 (citing *Gibbs v. Buck*, 307 U.S. 66, 71–72, 59 S.Ct. 725, 729, 83 L.Ed. 1111 (1939)); *see also* Rule 11(g), Rules of the United States District Court for the District of New Hampshire.

Plaintiffs assert that they are entitled to remedy pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Section 1983 does not encompass private discriminatory actions; to be actionable under section 1983, a purported unlawful interference with federal rights must be "fairly attributable to the State." *Rendell–Baker v. Kohn*, 457 U.S. 830, 838, 102 S.Ct. 2764, 2770, 73 L.Ed.2d 418 (1982) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 2754, 73 L.Ed.2d 482 (1982)). This prerequisite to liability under section 1983 serves two purposes. It preserves individual freedom by "limiting the reach of federal law and federal judicial power," and it "avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed." *Lugar, supra*, 457 U.S. at 936, 102 S.Ct. at 2753. Further-

more, "the state-action requirement reflects judicial recognition of the fact that 'most rights secured by the Constitution are protected only against infringement by governments.'" *Id.* (quoting *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 156, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978)). Thus, in the instant action the Court must determine whether the actions taken by Dartmouth and the other defendants against the plaintiffs "can fairly be seen as state action." *Rendell–Baker, supra,* 457 U.S. at 838, 102 S.Ct. at 2770.

In determining whether state action is present, three areas of inquiry are relevant.[1] These areas of inquiry are factually oriented; "[o]nly by sifting facts and weighing circumstances can the non-obvious involvement of the State in private conduct be attributed its true significance." *Lugar, supra,* 457 U.S. at 939, 102 S.Ct. at 2755 (quoting *Burton v. Wilmington Parking Auth.,* 365 U.S. 715, 722, 81 S.Ct. 856, 860, 6 L.Ed.2d 45 (1961)). The first such area is the extent to which the actions at issue were "compelled or even influenced by any state regulation." *Rendell–Baker, supra,* 457 U.S. at 841–42, 102 S.Ct. at 2771 (citing *Blum, supra,* 457 U.S. at 1007–10, 102 S.Ct. at 2787–89; *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 350, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974)).

In *Rendell–Baker,* the defendant school discharged five teachers and a vocational counselor. The only state regulation directed toward the school's personnel policies involved a state committee's power to exercise approval of persons hired as vocation counselors. The Supreme Court found that this limited amount of regulation neither compelled nor influenced the school's decision to terminate the plaintiffs' employment; consequently, the school's discharge of the plaintiffs was held not to constitute state action. *Rendell–Baker, supra,* 457

U.S. at 841–42, 102 S.Ct. at 2771. Similarly, in *Blum,* the Supreme Court held that decisions made by privately-owned nursing homes to transfer or discharge residents without their approval did not constitute state action because, although the homes were subject to heavy state regulation, the regulations themselves did not dictate the nursing homes' decisions with regard to particular cases. *Blum, supra,* 457 U.S. at 1008, 102 S.Ct. at 2788. In applying the dictates of *Rendell–Baker* and *Blum,* the First Circuit Court of Appeals has stated that "the party seeking to establish that action of a private party violated the Constitution must be able to point to the specific act or actions of the government which in fact motivated the private action." *Gerena v. Puerto Rico Legal Serv., supra,* 697 F.2d at 450, *quoted with approval in Ponce v. Basketball Fed'n of Puerto Rico,* 760 F.2d 375, 378 (1st Cir.1985).

Defendants herein allege that the actions taken by Dartmouth and the Inn were neither compelled nor influenced by any laws or regulations promulgated by the State of New Hampshire, its agencies or officers, or the federal government. Affidavit of Cary P. Clark, Dartmouth College counsel, at ¶¶ 8–9. Mr. Clark's affidavit also asserts that such laws and regulations do not exist in New Hampshire regarding private educational institutions' enforcement of student discipline. *Id.* § 8. Moreover, plaintiffs do not refute defendants' assertions, and in their memorandum of law seemingly concede that defendants' actions were unrelated to state regulation. *See* Plaintiffs' Memorandum at, *e.g.,* 23, 26, 27–28 & n. 5. Accordingly, the Court finds that defendants' actions were neither compelled nor influenced by state direction. *Cf. Albert v. Carovano,* 824 F.2d 1333 (2d Cir.1987) (state action found due to presence of state statute which strongly influenced actions

---

**1.** In *Rendell–Baker, supra,* the Supreme Court actually looked to four factors or "tests" to determine whether state action was present, the first of which was the extent to which the defendant received and depended upon state or federal funds. However, *Rendell–Baker* and subsequent cases make clear that "receipt of government funds does not render the govern-

ment responsible for a private entity's decisions concerning the use of those funds." *Gerena v. Puerto Rico Legal Serv.,* 697 F.2d 447, 450 (1983) (citing *Rendell–Baker, supra,* 457 U.S. at 840–41, 102 S.Ct. at 2771; *Blum v. Yaretsky,* 457 U.S. 991, 1011, 102 S.Ct. 2777, 2789, 73 L.Ed.2d 534 (1982)). Thus, Dartmouth's receipt of government funds is not at issue.

at issue); *Johnson v. Pinkerton Academy,* No. 84–726–D, slip op. at 9–12 (D.N.H. Apr. 16, 1986) (state action found based on language of state statute).

The next factor the Court considers is whether providing postsecondary education is a function that "has been traditionally the *exclusive* prerogative of the State." *Rendell–Baker, supra,* 457 U.S. at 842, 102 S.Ct. at 2772 (emphasis in original) (citations omitted). If so, concomitant to delegating its responsibility, the State is deemed to have transferred its authority, and state action is established. *See Ponce, supra,* 760 F.2d at 381 (citing *Jackson v. Metropolitan Edison Co., supra,* 419 U.S. at 353, 95 S.Ct. at 455).

Providing post-secondary education is not and has never been the *exclusive* prerogative of either the federal government or the individual states. *See, e.g., Fischer v. Driscoll,* 546 F.Supp. 861, 865 (E.D.Pa. 1982). "That a particular business is 'affected with the public interest,' or 'performs a function which serves the public,' does not convert its acts into those of the government." *Gerena, supra,* 697 F.2d at 451 (citing, respectively, *Jackson v. Metropolitan Edison Co., supra,* 419 U.S. at 353, 95 S.Ct. at 455; *Rendell–Baker, supra,* 457 U.S. at 842, 102 S.Ct. at 2772). Plaintiffs may therefore draw no support for their assertion of state action based on this ground.

The final test of state action to which the Court looks is whether a "symbiotic relationship" exists between Dartmouth and the State such as that which existed in *Burton v. Wilmington Parking Authority, supra. See Rendell–Baker, supra,* 457 U.S. at 842–43, 102 S.Ct. at 2772. In *Burton,* the Supreme Court held that the racially discriminatory actions of a privately-owned restaurant which was located on publicly-owned property and which paid rent to the city constituted state action because the State profited from the restaurant's conduct. Applying this factor to the instant case, the Court can attribute Dartmouth's actions to the State "only if the government 'has so far insinuated itself into a position of interdependence with [Dartmouth] that it must be recognized as a joint participant in the challenged activity.' " *Ponce, supra,* 760 F.2d at 381 (quoting *Burton, supra,* 365 U.S. at 725, 81 S.Ct. at 862); *Gerena, supra,* 697 F.2d at 451.

Plaintiffs argue that the charges and disciplinary proceedings Dartmouth brought against plaintiffs substituted for what would otherwise have been a state criminal prosecution. Plaintiffs contend that by bringing and prosecuting these charges Dartmouth in effect acted as a proxy for the State, thus establishing state action. Plaintiffs' Memorandum at 26–27. Plaintiffs further contend that the Town of Hanover profits monetarily from the relationship between campus security and the Hanover Police because Hanover is able to conserve police resources that the town would otherwise have to expend for security on college-owned property. *Id.* at 27.

The symbiotic relationship test is to be narrowly construed. *Cohen v. President & Fellows of Harvard College,* 568 F.Supp. 658, 661 (D.Mass.1983) (citing *Gerena, supra,* 697 F.2d at 451), *aff'd* 729 F.2d 59, *cert. denied,* 469 U.S. 874, 105 S.Ct. 233, 83 L.Ed.2d 161 (1984). Applying the test narrowly, the Court finds that the relationship between Dartmouth and the Town of Hanover Police Department does not embody the interdependence of state and private party which was extant in *Burton.*

As to the fact that Dartmouth maintains and enforces disciplinary standards to which students must conform, these standards do not replace laws and regulations promulgated by the State, nor do they relieve the State of its responsibility to simultaneously enforce its laws. This fact is explicitly set forth in the Dartmouth Student Handbook, which states: "Students cannot expect that their status as students will render them immune from regular legal processes." Defendants' Memorandum, Exhibit F at 17. "Mere approval or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives...." *Blum, supra,* 457 U.S. 1004–05, 102 S.Ct. 2786.

As to Dartmouth's maintenance of its own security force, Dartmouth asserts that its security personnel do not perform the same functions as local police and have no power either to enforce or to prosecute violations of New Hampshire law, and that the various individuals named as defendants in this action were acting as Dartmouth employees, not in any governmental capacity. Clark Aff. ¶¶ 6, 10. In essence, Dartmouth asserts that it receives the same law enforcement services from the Hanover Police Department as do other property owners in Hanover. *Id.* at ¶ 6. Plaintiffs do not refute these factual assertions. *See* Plaintiffs' Memorandum at 25–27.

As to the financial interdependence of Hanover and Dartmouth, the fact that Dartmouth maintains its own campus security department does not permit Hanover to abdicate its municipal police responsibilities toward the campus. Dartmouth security forces supplement law enforcement services provided by Hanover; they do not replace those services. Were the Court to accept plaintiffs' argument, any private organization contracting for additional security protection would automatically become a state actor merely because the State derived some incremental benefit by not having to provide additional service. Such a premise is obviously untenable.

In sum, the relationship here—that some benefit inures to Hanover because Dartmouth maintains a private security force—may not be equated with the joint economic venture the Supreme Court found in *Burton*. *See Ponce, supra,* 760 F.2d at 381–82 (quoting *Burton, supra,* 365 U.S. at 725, 81 S.Ct. at 862; *Gerena, supra,* 697 F.2d at 451). Thus, no symbiotic relationship exists between defendants and the State such that Dartmouth's or the Inn's actions may be deemed to be those of the State.

Considering the circumstances of the instant case in the light of factors set forth in *Rendell–Baker* and *Blum,* the actions

taken by Dartmouth and the Hanover Inn are not "fairly attributable to the State." *Lugar, supra,* 457 U.S. at 937, 102 S.Ct. at 2753. Therefore, inasmuch as state action is a prerequisite to liability under section 1983, the Court is without jurisdiction, and plaintiffs' federal claims must be dismissed.[2] Rule 12(b)(1), Fed.R.Civ.P. Having dismissed plaintiffs' federal claims, in accordance with general federal jurisprudential practice the Court also dismisses plaintiffs' pendent state-law claims. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726 & n. 16, 86 S.Ct. 1130, 727 & n. 16, 16 L.Ed.2d 218 (1966). Dismissal is without prejudice so that plaintiffs may bring their state claims in another forum if they so desire.

SO ORDERED.

---

**2.** Having dismissed plaintiffs' federal claims on jurisdictional grounds, the Court need not address Dartmouth's alternative ground for dismissal, in which Dartmouth argues that the

Court should abstain from hearing plaintiffs' claims due to ongoing parallel state court litigation.