Irene Cesarski PACHECO,
et al., Plaintiffs,

v.

FEDERACION ECUESTRE DE
P.R., et al., Defendants.

Civ. No. 97–1875(PG).

United States District Court,
D. Puerto Rico.

Jan. 15, 1999.

Antonio J. Amadeo–Murga, San Juan, PR, plaintiff represented by Amadeo–Murga.

Amancio Arias–Guardiola, San Juan, PR, plaintiff represented by Arias–Guardiola.

A.J. Bennazar–Zequeira, A.J. Bennazar Zequeira Law Offices, Hato Rey, PR, defendant represented by Bennazar–Zequeira.

Raul Davila–Rivera, Bauza & Davila, Old San Juan, PR, plaintiff represented by Davila–Rivera.

Jo–Ann Estades–Boyer, Department of Justice of PR Federal Litigation Division, San Juan, PR, defendant represented by Estades–Boyer.

Federacion Ecuestre, San Juan, PR, pro se.

Roberto Lefranc–Romero, Santurce, PR, pro se.

Ruben T. Nigaglioni, McConnell Valdes, San Juan, PR, defendant represented by Nigaglioni.

Luis R. Ortiz–Segura, Pinto–Lugo & Rivera, San Juan, PR, defendant represented by Ortiz–Segura.

Carlos A. Ramos, San Juan, PR, pro se.

### OPINION & ORDER

PEREZ–GIMENEZ, District Judge.

Pending before this Court are defendants Compañía de Fomento Recreativo's, Miguel A. Caro's, and Rosana M. Roig's (hereinafter referred to as "Fomento Recreativo", "Caro", and "Roig", respectively) motions to dismiss under Fed.R.Civ.P. 12(b)(6). (Dkt. 6 and 19), and plaintiffs' opposition to said motions. (Dkt.23) Roig is sued in her individual capacity and as member of the Governing Board of the Centro Ecuestre and as agent or trustee of Fomento Recreativo and/or the Departamento de Recreación y Deportes. Caro is sued as titular head of Fomento Recreativo.

### Factual Background

Plaintiff Monique Pacheco Cesarski (hereinafter referred to as "Monique") is a minor and an equestrienne who at the time of the facts alleged, was a member in good standing of the Federación Ecuestre. On June 2, 1996, five members of the Governing Board of the Centro Ecuestre signed and sent a letter to her father, Dr. Ramón Pacheco, barring him and his entire family from the Centro Ecuestre's facilities because of an alleged altercation between Dr. Pacheco and a riding instructor. Plaintiff Monique contends that by being prohibited from using the facilities of the Centro Ecuestre, defendants violated her constitutional rights and is consequently entitled to redress under 42 U.S.C. § 1983. Plaintiff Irene Cesarski Pacheco, Monique's mother, is suing under supplemental jurisdiction for the pain and suffering that she allegedly felt by observing her daughter unable to participate in equestrian events.

### Analysis & Discussion

Section 1983 states:

Every person who, under color of any statute, ordinance, regulation, custom or usage, any state or territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity or other proper procedure for redress.

Two allegations must always be made when pursuing a § 1983 claim: "First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." *Gómez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980), *citing Monroe v. Pape*, 365 U.S. 167, 171, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). These allegations cannot be merely conclusory. Specific facts must be alleged indicating that a federal right is at issue and that the defendants deprived the plaintiffs of that right while acting under color of state law. *See generally*, *Glaros v. Perse*, 628 F.2d 679, 684–685 (1st Cir.1980); *Hurney v. Carver*, 602 F.2d 993, 995 (1st Cir.1979).

In order to prevail under § 1983, plaintiffs are required to show that the defendants' actions can be properly classified as

an action of the State. "The mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 350, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974) (citation omitted). In the case at bar, plaintiffs concede in their complaint that the Federación Ecuestre and the Centro Ecuestre are private entities. (Complaint, ¶¶ 5 and 7, Dkt. # 1). Fomento Recreativo, although an agency of the Commonwealth, is implicated only by the fact that after the 1979 Pan–American games, it assigned to the Federación Ecuestre the land and the facility to which eventually Monique was forbidden access. Therefore, it is not readily apparent where the state action lies.

◼ Although the State's action need not be direct, *e.g., Lavoie v. Bigwood,* 457 F.2d 7 (1st Cir.1972), there must be "a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974) (citation omitted). Plaintiffs admit that there is no such nexus in the case at bar. (Dkt. # 23 at p. 7).

◼ In addition to a finding of a close nexus, there must be some pressure as well, since "a State normally can be held responsible for a private decision when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Blum v. Yaretsky,* 457 U.S. 991, 1004, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) (citations omitted).[1] *See also, Rodríguez–García v. Dávila,* 904 F.2d 90, 97 (1st Cir.1990). The plaintiffs admit that the State did not exercise any coercion or encouragement adversely affecting Monique and her relatives. (Dkt. # 23 at p. 7).

◼ Plaintiffs' complaint fails to meet the standards set forth above with regard to the availability of a § 1983 action. In order to show a "symbiotic relationship" between the Commonwealth, the Federación Ecuestre, and Fomento Recreativo, plaintiffs allege, *inter alia,* that: (1) the facilities of the Centro Ecuestre were built with tax dollars; (2) maintenance expenses are shared by the Commonwealth through its agencies and the Centro Ecuestre, major repairs provided by the former and the daily upkeep by the latter; (3) the Commonwealth provides the Centro Ecuestre with water and electricity free of charge, as well as with tax exemptions; (4) insular and international competitions of the relevant sport are endorsed and supported with public funds. (Complaint ¶ 17, Dkt. # 1).

None of these allegations constitute a close enough relationship between the Commonwealth and the defendants Fomento Recreativo, Caro and Roig, to trace back the prohibition imposed on Monique as an action taken by the State. There is no evidence suggesting that the Commonwealth or Fomento Recreativo was inextricably intertwined with the Board of Directors of the Centro Ecuestre's decision to prohibit Monique from using its facilities. Just as lacking is any evidence to support plaintiffs' allegations that the defendants acted as a trustee of the State under the "custom and usage" provision of § 1983.

In *Ponce v. Basketball Federation of the Commonwealth of Puerto Rico,* 760 F.2d 375 (1st Cir.1985), the Court of Appeals for the First Circuit faced a set of facts remarkably similar to the case at bar. In *Ponce,* the plaintiff brought suit challenging the decision of the Basketball Federation of Puerto Rico, a private sporting organization, to revoke his right to play in a basketball league. Despite the fact that the government provided office space, payment of utilities, maintenance, free bus service and equipment, indirect support from the Olympic Committee, and beneficial contracts allowing free or below-market rate use of government stadiums, the Court found that the decision by the Basketball Federa-

---

1. In *Blum,* the Court held that public subsidy of the facilities of a nursing home does not make the acts of the physicians and nursing home administrators acts of the State. Hence, the Court concluded that the nursing home's receipt of public funds did not make discharge and transfer decisions by the nursing home's administration acts of the State.

tion of Puerto Rico to exclude the plaintiff from playing in the league did not constitute state action.

Plaintiffs cite *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961) (holding that there was state action when a restaurant located in a publicly owned and operated automobile parking building refused to serve an individual food or drink solely because he was Black) in support of their contention that there is state action in the case at bar. *Burton*, however, is distinguishable from the facts before this Court. In *Burton* a primary constitutional interest was at stake, namely racial integration and equal access to all American citizens regardless of the color of their skin. Here, however, the decision to prohibit Monique from using the facilities has nothing to do with her race, age, or gender. Rather, the defendants' decision with regard to Monique and her relatives is a matter of business administration. Furthermore, in *Burton* all maintenance expenses were paid with public funds. Yet, in the present case, plaintiffs acknowledge that the responsibility of the day-to-day upkeep of the facilities was exclusively in the hands of the Centro Ecuestre, a private entity. (Complaint ¶ 17(b), Dkt. # 1). Therefore, it cannot be said that the Commonwealth of Puerto Rico has "far insinuated itself into a position of interdependence with [the Centro Ecuestre and the Federación Ecuestre] that it must be recognized as a joint participant of the challenged activity," *Id.* at 725, 81 S.Ct. 856, or that there is a "symbiotic relationship" between them.

Plaintiffs emphasize that this case is more like *Fortin v. Darlington Little League*, 514 F.2d 344 (1st Cir.1975) (state action found to exist where a ten-year old girl had been denied because of her sex the right to participate in a private baseball program that used public facilities) than like *Ponce, supra*, because the government built the facilities of the Centro Ecuestre exclusively for the equestrian English-type sport. Plaintiffs' myopic view of the facts, however, ignores

that *Fortin* was concerned, like *Burton*, with a matter of fundamental constitutional rights, the former with respect to the equal protection of all American citizens regardless of their gender, and the latter with respect to race.[2] No such matter of constitutional concern has been raised by Monique and her mother. Although the presence of a fundamental constitutional right is not essential to a finding of a "symbiotic relationship" between the State and a private entity in a civil rights action, discrimination on the basis of a so-called suspect class triggers a greater degree of scrutiny to determine whether the State has had any role in such acts. In any event, our distinction of *Fortin* need not rest on the presence of fundamental rights, since the same was decided prior to *Rendell–Baker v. Kohn*, 457 U.S. 830, 843, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982), in which the Supreme Court of the United States held that in order to find a "symbiotic relationship" the State must have profited from the discriminatory activity. Plaintiffs have provided no evidence to demonstrate that the Commonwealth of Puerto Rico has benefitted out of Monique's exclusion from the facilities of the Centro Ecuestre.

The Centro Ecuestre and Federación Ecuestre are private entities, and their decisions with regard to allowing individuals to participate in their official events or facilities is a matter that in no reasonable manner can be characterized as coerced, encouraged by, or for the profit of, the Commonwealth of Puerto Rico. Therefore, the action against Roig in her individual capacity or in her capacity as member of the Governing Board of the Centro Ecuestre cannot be validly pursued under § 1983. Caro and Fomento Recreativo's roles are even more remote with respect to the decision affecting Monique, since neither Caro nor Fomento Recreativo are directly involved with the decision-making process of the Centro Ecuestre and the Federación Ecuestre.

**WHEREFORE,** for the reasons above stated, defendants' motions to dismiss as to

---

2. In *Fortin*, plaintiffs alleged that the denial by the defendant of allowing Allison Fortin to participate in its baseball games, exclusively because of her sex, constituted a denial of equal protec-

tion of the law as provided under the Fourteenth Amendment. *See Fortin v. Darlington Little League*, 376 F.Supp. 473, 474 (D.R.I. 1974).

Fomento Recreativo, Caro, and Roig (Dkt. 6 and 19) are hereby **GRANTED.** In view of this decision, Irene Cesarski Pacheco's supplemental claim is hereby **DISMISSED** as well.

**IT IS SO ORDERED.**