USCA1 Opinion

 

United States Court of Appeals

For the First Circuit

No. 01-2410

THEODORE S. BROWN AND JAMES LINNEHAN, ET AL.,

Plaintiffs, Appellants,

v.

ELI NEWBERGER, CHILDREN'S HOSPITAL, INC., AMY C. TISCHELMAN, TRIAL
COURT OF MASSACHUSETTS, DEPARTMENT OF SOCIAL SERVICES, EILEEN KERN,
SANDRA FYFE, CHRISTOPHER SALT, 

AND JACK MCCARTHY, JR.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Robert E. Keeton, U.S. District Judge]

Before

 Lynch, Circuit Judge,

Coffin and Cyr, Senior Circuit Judges.

 Barbara C. Johnson on brief for appellants Brown and Linnehan.

 J. Walter Freiberg, III, Heather Dauler and Weston, Patrick,
Willard & Redding on brief for appellee Kern.

 Thomas F. Reilly, Attorney General, Patrick J. Cassidy, Assistant
Attorney General, on brief for appellees Trial Court of Massachusetts
and Department of Social Services.

 William P. Hurley and Cogavin & Waystack on brief for appellee
McCarthy.

 Rebecca J. Wilson, Sandra P. Criss and Peabody & Arnold LLP, on
brief for appellee Fyfe.

 Alexander G. Gray on brief for appellee Salt.

 John J. Reardon, Kim S. Gainsboro and Hassan & Reardon, P.C., on
brief for appellees Newberger, Tischelman and Children's Hospital, Inc.

May 30, 2002

 COFFIN, Senior Circuit Judge. These consolidated appeals
follow on the efforts of plaintiffs-appellants, Theodore Brown and
James Linnehan, to acquire rights to visit their children. The
children had been taken by their mothers during pending divorce and
custody proceedings from Maine to Massachusetts, where the mothers
obtained court orders barring the fathers from visitation on the basis
of findings of sexual abuse.

 Brown and Linnehan joined in filing a suit in the United
States District Court for the District of Massachusetts against a dozen
defendants, including the Trial Court of Massachusetts, the
Massachusetts Department of Social Services (DSS), Children's Hospital,
several doctors, and mental health and social workers.

 The complaint asserted twelve claims against various
defendants. Six invoke federal law: Count Two (Fourteenth Amendment,
interference with parental rights); Counts Three and Four (Civil Rights
Act, 42 U.S.C. § 1983); Count Eight (Civil RICO, 42 U.S.C. §§ 1961-68);
and Counts Five and Six (unspecified federal and civil rights laws). 
Six claims assert violations of state laws: Count One (negligence);
Count Seven (defamation); Count Nine (breach of contract); Counts Ten
and Eleven (negligent and intentional infliction of emotional
distress); and Count Twelve (Chapter 93A). The district court
dismissed the federal-law claims with prejudice and the state-law
claims without prejudice. 

I. Factual Background

 Brown's complaint alleged that in 1996 his ex-wife hired
defendant Eli Newberger, M.D., a pediatrician and Director of the
Family Development Program of Children's Hospital, to conduct a sexual
abuse evaluation of her children. This took place over a period in
excess of seven months. Newberger's team included defendant Amy
Tischelman, M.D., who interviewed Brown's children. Their joint report
was submitted to Brown's ex-wife and was ultimately given to the court,
which then denied visitation rights to Brown.

 Linnehan's case presents a more complex series of events. 
In 1988, defendant Kern, a social worker employed by New Bedford 
Child and Family Services, met with the mother of Linnehan's child
Brenden, and with Brenden. Developing a concern over the possibility
of child abuse, Kern deemed herself a "mandatory reporter" under
Massachusetts law, and submitted a report to DSS. This led to a court-ordered sexual abuse evaluation of Brenden by the Collis Center. 
Defendant Sandra Fyfe, a Collis Center employee, performed the
evaluation. A second court-ordered evaluation was also done in 1988 by
defendant Christopher Salt, who submitted a written report to the court
and updated it in 1992. Also in 1992, at the suggestion of Brenden's
mother's attorney, defendant Newberger conducted an assessment spanning
several months, and ultimately submitted his report to the court. In
1993, both Linnehan and Brenden's mother agreed that defendant McCarthy
would serve as Brenden's therapist and would submit reports to the
Probation Department of the court every six months. The period of such
evaluation extended into 1999. During all this time, Linnehan
continued to be denied visitation rights.

II. Discussion

 As we review the three voluminous volumes of appendices
containing some but not all of the submissions by all the parties, the
thirty-seven page opinion of the district court, and the multiple
appellate briefs, we cannot escape the conclusion that all has been
said that can be said. At the present juncture, this litigation has
reached the point where dedication and commitment have outrun legal
merit. Without intending any disrespect, therefore, we shall briefly
indicate our reasons for affirming, without implying that they are the
only grounds available.

A. Claims against the Massachusetts Trial Court and DSS

 The claims under 42 U.S.C. § 1983 fail because a state and
its agencies are not "persons." Will v. Mich. Dept. of State Police,
491 U.S. 58, 71 (1989). The claims based on the Fourteenth Amendment
fail because there has been no unequivocal abrogation of the
Commonwealth's Eleventh Amendment immunity. See Seminole Tribe of Fla.
v. Florida, 517 U.S. 44, 55-56 (1996); Alabama v. Pugh, 438 U.S. 781,
782 (1978). Appellants having sued only state agencies, not officials,
there is no basis for invoking Ex parte Young, 209 U.S. 123 (1908). 
Nor is there any basis for claims that the state agencies violated
state law. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89,
119-21 (1984).

 On appeal, appellants launch a strenuous argument that
Massachusetts has, from its beginning, waived its immunity from citizen
suits through Articles 5 and 11 of its Declaration of Rights. Article
5 reads in part that "the several magistrates and officers of
government . . . are at all times accountable to [the people]." 
Article 11 proclaims merely that individuals "ought to find a certain
remedy" for all injuries or wrongs. 

 We are not certain that this argument, although raised in
plaintiffs' opposition to the state defendants' motion for judgment on
the pleadings, continued to be pursued. Appellees Fyfe and Salt 
contend that it was not raised before the district court. The court in
its opinion did not allude to it. In any event, the argument is
transparently flawed. Article 5 does not speak of either the
Commonwealth or its agencies as entities; the reference is to
individuals. The language is so far removed from unequivocally
indicating that citizens have a right to sue the state in state or
federal court that it is not surprising that appellants have found no
reference to the claim in any reported cases and concede that Article
5 is "alive, albeit ignored." The argument fails. 

B. Civil RICO claims against all defendants

 These claims were not argued in appellants' main brief on
appeal, appearing only in a reply brief. As we have held in the past,
an issue raised only in a reply brief is forfeited. See, e.g., County
Motors v. Gen. Motors Corp., 278 F.3d 40, 43 (1st Cir. 2002); N. Am.
Specialty Ins. Co. v. Lapalme, 258 F.3d 35, 45 (1st Cir. 2001). In any
event, as the district court noted, the references to telephone
conversations and uses of the mails fail to meet the particularity
requirements of Fed. R. Civ. P. 9(b). See Ahmed v. Rosenblatt, 118
F.3d 886 (1st Cir. 1997).

C. Claims against Children's Hospital, Newberger,

Tischelman, Kern, and McCarthy

 We dispose of these claims with a common holding that because
all of these defendants were private actors, they cannot be subjected
to Section 1983 liability as having acted under color of state law. We
apply the familiar test first articulated in Ponce v. Basketball Fed'n
of Puerto Rico, 760 F.2d 375 (1st Cir. 1985), to determine if one can
be considered a state actor: "(1) whether there was an elaborate
financial or regulatory nexus between appellants and the government .
. . which compelled appellants to act as they did, (2) an assumption by
appellants of a traditionally public function, or (3) a symbiotic
relationship involving the sharing of profits." Id. at 377.

 Appellants concede that the court did not ask Children's
Hospital and Dr. Newberger to do anything. Instead, appellants claim
that state action stemmed from the fact that Dr. Newberger knew that
his reports would be used by the court. Clearly, the district court
was correct in holding that mere knowledge of probable future use met
none of the three tests. Likewise, Dr. Tischelman must also be
accorded private actor status, because her involvement was merely that
of a member of Newberger's team and the interviewer of Brown's younger
children.

 Defendant Kern's liability as a state actor is pressed on
the basis that she filed a report of suspected sexual abuse of Brenden
Linnehan with DSS. Mass. Gen. Laws ch. 119, § 51A, requires a wide
variety of social and health workers to file such reports if they have
reasonable cause to believe a child is suffering from sexual abuse. 
Both the failure to file reports and frivolous filings are punishable
by fine. One required to file such a report is protected from criminal
or civil liability. Within sixty days from receipt of such a report,
DSS must notify the reporter of its determination of the nature,
extent, and causes of injuries and the social services it intends to
provide. While this kind of "mandatory reporting" goes somewhat beyond
the cases dealing with the voluntary furnishing of information to the
police, which we have considered in Rivera-Ramos v. Roman, 156 F.3d
276, 282 (1st Cir. 1998), and Roche v. John Hancock Mutual Life
Insurance Co., 81 F.3d 249, 254 n.2 (1st Cir. 1996), we conclude that
the reporting requirement under section 51A does not create the kind of
regulatory nexus that could justify treating Kern as a state actor.

 The specific action of Kern was merely to signal the need for
DSS to look into the matter and decide for itself whether there was a
problem and what to do about it. Nothing seems more counterintuitive
to us than to reason that a statute which protects one who complies
from civil or criminal actions under state law should be the vehicle
for subjecting the actor to liability under federal law. Although this
issue has, understandably, arisen only rarely in decided cases, we
agree with the holdings in Thomas v. Beth Israel Hospital Inc., 710 F.
Supp. 935 (S.D.N.Y. 1989), and Haag v. Cuyahoga County, 619 F. Supp.
262, 283 (N.D. Oh. 1985), aff'd, 798 F.2d 1414 (6th Cir. 1986) (filing
a mandatory child abuse report does not constitute state action). (1)

 Defendant McCarthy, earlier alleged to have been a court-appointed investigator by plaintiffs, was later emphatically
characterized as a private individual by plaintiffs, who asserted that
Brenden's parents had agreed that he was to be the child's therapist
and report periodically to the court's Department of Probation. 
Appellants invoke state actor status, based on the action of McCarthy
in filing the reports. In McCarthy's case, there is not even a
statutory framework for such action, it being the product of agreement
between private parties. Nor are any of the other determinants of
state action implicated.

D. Claims against Salt and Fyfe

 Appellants pose several arguments concerning these claims. 
The first is that neither Salt nor Fyfe was properly appointed. In the
case of Salt, who appellants alleged was appointed by the court as an
evaluator, the argument is that he was improperly appointed under Mass.
Gen. Laws ch. 119, §§ 21, 24, which require the appointee to be
qualified as an expert. Salt, the argument continues, was never so
qualified. In Fyfe's case, the argument is that it was her employer,
Collis Center, and not Fyfe, who was court appointed. 

 The essential fact is that both defendants were operating at
the request of the court. They submitted their reports to the court,
which accepted them, and considered them in its actions. We agree with
the district court which found that "Salt was acting in close
association with the judicial process" and that "Fyfe was indisputably
acting to carry out a court order." In Watterson v. Page, 987 F.2d 1,
8 (1st Cir. 1993), we refused to consider a claim that a psychologist
had investigated appellant's family "without express court authority
and direction to do so," observing that "[t]he right to family
integrity clearly does not include a constitutional right to be free
from child abuse investigations." Id. Were collateral and
retrospective attacks on technical defects of court appointments
permitted, the court's work in an already difficult litigation field
would often be undone, with consequent uncertainty, delay, and
frustration. 

 Viewing the functions performed by Salt and Fyfe, as we are
required to do, Cleavenger v. Saxner, 474 U.S. 193, 201 (1985), we
conclude that the information gathering, reporting, and recommending
tasks of both are similar in nature and purpose to those of a guardian
ad litem and qualify to confer absolute quasi-judicial immunity. See
Cok v. Cosentino, 876 F.2d 1, 3 (1st Cir. 1989). Another argument made against both defendants is that they
sacrificed whatever immunity they may have had by their actions
violating plaintiffs' constitutional rights. Here, too, however, Cok
makes a relevant comment about the nature of judicial immunity and
therefore quasi-judicial immunity. We stated there that the
entitlement is to "absolute immunity from civil liability for any
normal and routine judicial act. . . . This immunity applies no matter
how erroneous the act may have been, how injurious its consequences,
how informal the proceeding, or how malicious the motive." Id. at 2. 
We therefore hold that Salt and Fyfe are entitled to the protective
cloak of absolute quasi-judicial immunity.

E. Other Issues

 A residue of other issues remains, as to which we have only
the briefest of comments. The district court conscientiously probed
the complaint and, giving plaintiffs-appellants the benefit of doubt,
reconstructed a conspiracy claim under 42 U.S.C. § 1985(3), which,
however, was defective, lacking any identification of a cognizable
class. This issue, however, has not been pursued on appeal and is
forfeited.

 Counts 5 and 6, as previously noted, seek to invoke
unidentified federal and state civil rights laws. They do not survive
even deferential analysis and are not pursued on appeal.

 Appellants take issue with the district court's having
removed a default judgment against defendant Newberger. We have
reviewed the reasons advanced in Newberger's motion to remove default
and cannot fault the district court's exercise of discretion in
granting it. We could see very little delay and no discernible
prejudice. See Coon v. Grenier, 867 F.2d 73, 78 (1st Cir. 1989).

 Finally, we further approve the dismissal of the state
claims against all defendants except the Trial Court and DSS, without
prejudice. The state claims against the Trial Court and DSS, as we
have noted, must be dismissed with prejudice.

 Affirmed.
1. [1] Indeed, under 42 U.S.C. § 5106a(b)(iv) and its 1974
predecessor, 42 U.S.C. § 5106a(b)(1)(B), federal grants to
states for child abuse programs require a state to include
provisions for immunity from prosecution under state and local
laws, such as Mass. Gen. Laws ch. 119, § 51A. At least one
court has ruled that Congress itself has impliedly created an
immunity from section 1983 liability through this legislation. 
Thomas v. Chadwick, 274 Cal. Rptr. 128, 136-37, 224 Cal. App.
3d 813, 824 (App. 1990).