USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 95-2170 ELIEZER BARRIOS-VELAZQUEZ, ET AL., Plaintiffs - Appellants, v. ASOCIACION DE EMPLEADOS DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO, ET AL., Defendants - Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Salvador E. Casellas, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Coffin, Senior Circuit Judge, ____________________ and Cyr, Circuit Judge. _____________ _____________________ Francisco R. Gonz lez-Col n, with whom Francisco R. Gonz lez ___________________________ _____________________ Law Firm was on brief for appellants. ________ Lino J. Salda a, with whom Carmen M. Dom nguez was on brief ________________ ___________________ for appellees. ____________________ May 24, 1996 ____________________ TORRUELLA, Chief Judge. Appellants Eliezer Barrios- TORRUELLA, Chief Judge. ___________ Vel zquez ("Barrios"), Myrta Nieves-Vega ("Nieves") and Isidro Collazo ("Collazo"), in their personal capacity and as representatives of the "Comit de Delegados y Miembros Pro Sana Administraci n de AEELA" ("SAAEELA") (collectively, "Plaintiffs"), appeal the district court's dismissal for lack of subject matter jurisdiction of their complaint brought pursuant to 42 U.S.C. 1983 against the Asociaci n de Empleados del Estado Libre Asociado de Puerto Rico ("AEELA") and Isaac Neftal  Rojas-Nater ("Rojas"), Roberto Aquino-Garc a ("Aquino") and Miguel Mart nez-Williams ("Mart nez"), in their personal and official capacities (collectively, "Defendants"). We affirm the decision of the district court. I. STANDARD OF REVIEW I. STANDARD OF REVIEW "We review the grant of a motion to dismiss de novo, _______ taking the allegations in the complaint as true and making all reasonable inferences in favor of plaintiff." Rockwell v. Cape ________ ____ Cod Hosp., 26 F.3d 254, 256 (1st Cir. 1994); see Rumford __________ ___ _______ Pharmacy, Inc. v. City of E. Providence, 970 F.2d 996, 997 (1st ______________ _____________________ Cir. 1992). "We must liberally construe [Plaintiffs'] complaint and affirm its dismissal only if [they] cannot prove any set of facts entitling [them] to relief." Rockwell, 26 F.3d at 255. ________ Although it does not affect the outcome, it would appear that the motion to dismiss was converted to a motion for summary judgment since the district court plainly considered -2- "matters outside the pleadings." Fed. R. Civ. P. 12(c).1 Plaintiffs in fact argue in their brief that due to representations made to them by defendants' attorney, they postponed filing an opposition to defendants' motion to dismiss, and they were therefore not afforded a "reasonable opportunity" to present Rule 56 material. See Br. for Appellants at 12. The ___ answer to this argument, of course, is clear: even considering this Rule 56 material, see supra note 1, we conclude that ___ _____ plaintiffs demonstrated no genuine issue of material fact. II. BACKGROUND II. BACKGROUND The instant case stems from a dispute over the circumstances under which a Quadrennial Assembly (the "Assembly") of the AEELA was held on July 8, 1995. The AEELA has approximately 180,000 members, all of whom are regular or former employees of the government of Puerto Rico. Of these members,  ____________________ 1 These "matters" included the following: 1) the AEELA was created as a quasi-public entity to provide financial services to government employees, which is a traditional government function; __________ 2) membership in the AEELA is mandatory for most Commonwealth employees as is the 3% payroll deduction to fund the AEELA's operations; 3) the AEELA's operations and delegate elections are heavily regulated by statute (e.g., number of members per delegate); 4) heads of government departments appoint the Election Committee to run the delegate elections; 5) the Board of Directors and the Election committee members often work on government time, and use government facilities and equipment; 6) the AEELA's finances are supervised by the Commonwealth's Comptroller; 7) the AEELA is exempt from state taxation; 8) the Commonwealth collects the 3% membership fee for the AEELA by making payroll deductions; 9) the AEELA may make investments only "on advice" from the Commonwealth's Treasury Department; 10) the AEELA's employees participate in the Commonwealth government's pension plan; 11) the Commonwealth provides the AEELA with some services free of charge; and 12) the AEELA's members, delegates, and directors are all government employees. -3- 75% are required by law to participate in and be members of the AEELA, and are required to provide 3% of their salary to be administered by the AEELA. Only employees of public corporations and municipalities may participate in the AEELA. Plaintiffs contend, and this court must assume, given our procedural posture, that Defendants have exercised control over the AEELA since 1987, and used this control to handpick delegates to the Assembly in question in order to maintain their control, and that of the Popular Democratic Party ("PDP"), over the AEELA. We must further infer that Defendants impermissibly notified only those delegates who shared their political beliefs that the Assembly would be held, and refused to take the necessary measures to notify or confirm the membership of delegates who do not support the PDP. Furthermore, we infer that Defendants denied Plaintiff-Appellant Nieves a list of the certified delegates, thus hindering her candidacy for President of the AEELA's Board of Directors. Plaintiffs charge that these actions amount to illegal political discrimination in violation of their rights under the Due Process Clause of the Fourteenth Amendment and the enabling law of the Commonwealth Employees Association, 3 L.P.R.A.  862(b). They also contend, contrary to the district court opinion dismissing their claim under 28 U.S.C. 1983, that the acts of Defendants are state action. III. DISCUSSION III. DISCUSSION "Title 42 U.S.C. 1983 provides a remedy for -4- deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place 'under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . .'" Rockwell, 26 F.3d at 256 (quoting ________ Lugar v. Edmondson Oil Co., 457 U.S. 922, 924 (1982)). To state _____ _________________ a claim under 1983, a plaintiff must make two showings: the existence of a federal or statutory right; and a deprivation of that right by a person acting under color of state law.2 See ___ id.; Watterson v. Page, 987 F.2d 1, 7 (1st Cir. 1993). ___ _________ ____ The district court addressed only the second showing, dismissing this action on the ground that Defendants did not act under color of state law when they scheduled the general assembly for July 8, 1995. We note in passing that at least two courts have already concluded that the AEELA is not an agency, department or instrumentality of the Government of Puerto Rico, suggesting that the AEELA's actions and those of its members cannot be labeled state action. Morales v. Chaves, No. 75-1087, _______ ______ slip op. at 2 (D.P.R. Dec. 9, 1975) (noting that while "[i]t is true that the Association was created by statute and only government employees may be members . . . there all relation with the Commonwealth ceases"); Association of Employees of Puerto ____________________________________ Rico v. V squez-P rez, 92 JTS 52, slip op. at 26 (P.R. 1992) ____ _____________  ____________________ 2 For the purposes of section 1983, "Puerto Rico enjoys the functional equivalent of statehood," and thus the term "state law" includes Puerto Rico law. Mart nez v. Col n, 54 F.3d 980, ________ _____ 984 (1st Cir. 1995); see Playboy Enters., Inc. v. Public Serv. ___ _____________________ ____________ Comm'n of P.R., 906 F.2d 25, 31 n.8 (1st Cir.), cert. denied, 498 ______________ ____________ U.S. 959 (1990). -5- (official trans.) (stating, in the context of deciding whether the AEELA was subject to the Truth in Lending Act, that "although the Association is a highly regulated entity created by the government, whose objective is to implement the government policy of . . . encouraging saving among public employees . . . it cannot be considered as a government agency, department, instrumentality or public corporation"). While persuasive as to certain points, these cases do not represent binding authority for this court. As a result, like the district court before us, we conduct our own inquiry into the issue. Because section 1983 does not reach private actions, the key issue before us is whether the conduct at issue in this case may be "'fairly attributable to the State,'" Rodr guez- __________ Garc a v. D vila, 904 F.2d 90, 94 (1st Cir. 1990) (quoting Lugar, ______ ______ _____ 457 U.S. at 937); see Ponce v. Basketball Fed'n of Puerto Rico, ___ _____ ________________________________ 760 F.2d 375, 377 (1st Cir. 1985). The state action inquiry is "'necessarily fact-bound.'" Id. (quoting Lugar, 457 U.S. at ___ _____ 937). "In cases under 1983, 'under color' of law has consistently been treated as the same thing as the 'state action' required under the Fourteenth Amendment." Rendell-Baker v. Kohn, _____________ ____ 457 U.S. 830, 838 (1982). "The ultimate issue in determining whether a person is subject to suit under 1983 is the same question posed in cases arising under the Fourteenth Amendment: is the alleged infringement of federal rights 'fairly attributable to the State?'" Id. (quoting Lugar, 457 U.S. at ___ _____ 937). -6- On appeal, Plaintiffs contend that the AEELA is an extension of the government of the Commonwealth of Puerto Rico, and that the conduct at issue may be fairly attributed to the state on that basis as direct state action. Alternatively, Plaintiffs argue that even if the AEELA is a private organization, the actions that give rise to the instant case may still be fairly attributed to the state as indirect state action. Ultimately, a finding of either direct or indirect state action would suffice to sustain Plaintiffs' section 1983 action. See ___ Rodr guez-Garc a, 904 F.2d at 95. ________________ A. Direct State Action  A. Direct State Action Plaintiffs contend that Defendants' actions may be fairly attributed to the state because, they claim, the AEELA is a public corporation and therefore, an "arm of the state." Although "[t]he Act which creates the Association does not define whether it is an agency, a department, an instrumentality or a public corporation," V squez-P rez, slip op. at 24, both federal _____________ and state courts have held that the AEELA is not a governmental agency, see Morales, slip op. at 2 (noting that "the Supreme ___ _______ Court of Puerto Rico has, since 1932, consistently ruled that the Employees Association is not a part of the Government"); V squez- ________ P rez, slip op. at 26. _____ Admittedly, technical labels are not dispositive. In Lebr n v. National R.R. Passenger Corp., ___ U.S. ___, 115 S. Ct. ______ _____________________________ 961 (1995), the Supreme Court addressed direct state action and technical labels, ruling that, despite a statutory disclaimer of -7- agency status, the National Railroad Passenger Corp. ("Amtrak") was nonetheless a government entity. In deciding that Amtrak was a state actor when it refused to lease advertising space to an artist's display because it was "political," the Court stated that "it is not for Congress to make the final determination of Amtrak's status as a government entity for purposes of determining the constitutional rights of citizens affected by its actions." Id. at 971. The Court, in dicta, indicated that the ___ issue of state action and technical labels that it was addressing also had relevance to the states, stating that "it cannot be that government, state or federal, is able to evade the most solemn obligations imposed in the Constitution by simply resorting to the corporate form [since] [o]n that thesis, Plessy v. Ferguson ______ ________ can be resurrected by the simple device of having the State of Louisiana operate segregated trains through a state-owned Amtrak." Id. at 972 (citations omitted). ___ While the logic of Lebr n applies to the present case, ______ we conclude that it does not avail Plaintiffs. The Court held that where the Government creates a corporation by special law, for the furtherance of governmental objectives, and retains for itself permanent authority to appoint a majority of the directors of that corporation, the corporation is part of the Government for purposes of the First Amendment. Id. at 974-75. The Supreme Court in Lebr n focused on the degree ___ ______ of control that the federal government had over Amtrak. In contrast, neither party in the instant case has contended that -8- the Government of Puerto Rico has retained permanent authority over the directors of the AEELA. This distinction becomes clearer when we compare the facts surrounding Amtrak and the AEELA. The President appoints the majority of Amtrak's directors, the federal government owns all of Amtrak's voting stock, and the government subsidizes Amtrak's "perennial losses." Id. at 967. By contrast, the government of Puerto Rico does not ___ retain the power to appoint any of the AEELA's directors. Instead, the directors are elected by delegates who themselves are elected by the AEELA's membership at large. Furthermore, the AEELA's losses, if any, are not regularly subsidized by the government of Puerto Rico. As a result of these facts, we conclude that the AEELA does not constitute an extension of the government of Puerto Rico, and so Defendants must be treated as private parties. Thus, direct state action is not present in this case. B. Indirect State Action B. Indirect State Action We therefore turn to the question of whether the conduct at issue, while not that of the government of Puerto Rico directly, may be nonetheless fairly attributed to the state. A private entity's conduct is not actionable under section 1983 if the challenged action results from the exercise of private choice and not from state influence or coercion. See id. at 980 ___ ___ (O'Connor, J., dissenting) (concluding that Lebr n did not ______ involve direct state action, and therefore, unlike the majority, inquiring as to indirect state action); San Francisco Arts & _____________________ -9- Athletics, Inc. v. United States Olympic Comm., 483 U.S. 522, 547 _______________ ___________________________ (1987) (stating that "[t]here is no evidence that the Federal Government coerced or encouraged the USOC in the exercise of its right [to deny use of its copyright]"); Rendell-Baker, 457 U.S. _____________ at 841 (holding that discharge decisions of largely publicly- funded private school for troubled students were not subject to constitutional challenge because those actions "were not compelled or even influenced by any state regulation"). As a result, this court must determine whether the conduct of Defendants, as private parties, rises to the level of state action. As this court has previously spelled out, the relevant inquiries consist of whether there was (1) . . . an elaborate financial or regulatory nexus between [Defendants] and the government of Puerto Rico which compelled [Defendants] to act as they did, (2) an assumption by [Defendants] of a traditional public function, or (3) a symbiotic relationship involving the sharing of profits. Rodr guez-Garc a, 904 F.2d at 96; see Ponce, 760 F.2d at 377. We ________________ ___ _____ examine each test in turn, as satisfaction of any one of the three tests requires that we find indirect state action. 1. Nexus Analysis 1. Nexus Analysis As both parties acknowledge, "the challenged action of the regulated entity . . . may be fairly treated as that of the State itself . . . only when it can be said that the State is responsible for the specific conduct of which the plaintiff complains." Blum v. Yaretsky, 457 U.S. 991, 1004 (1982), cited ____ ________ _____ in Rodr guez-D vila, 904 F.2d at 97. The test is whether the __ ________________ -10- government exercised coercive power or provided such significant encouragement that the complained-of misconduct surrounding the Assembly and the Board elections must be deemed to be the conduct of the government. Id., 904 F.2d at 90. ___ We emphasize that our examination focuses on the government's connection to the complained-of action, not the government's connection to the AEELA itself. See Blum, 457 U.S. ___ ____ at 1004. As a result, we find extraneous Plaintiffs' arguments highlighting the facts that the AEELA was created by law, that its members and Directors are public employees, and that the elective process is regulated by law, except to the degree that these facts demonstrate government coercion or encouragement of the complained-of conduct. Plaintiffs contend that Defendants derived their authority to schedule the Assembly and election from a Puerto Rico law, 3 L.P.R.A. 862(d), and that Defendants were government employees who performed their duties during working time and using government equipment and materials. However, Plaintiffs have hung their claim on the proposition that state- granted authority suffices to find state action, since they have failed to allege that the government coerced or encouraged the specific election rigging that gives rise to their complaint. We believe that the state's grant of authority alone cannot justify a conclusion of state action in this case. We draw this conclusion by comparing two of our previous cases. First, like the district court, we are persuaded -11- by our holding in Rockwell, 26 F.3d at 258, that state-granted ________ authority making possible a private party's actions does not, without more, sufficiently show that the specific action taken under that authority constitutes state action. Id. In Rockwell, ___ ________ we concluded that the fact that a Massachusetts statute authorized public health professionals to hospitalize persons believed to present a likelihood of serious harm by reason of mental illness, did not suffice to create a sufficient link between the state and the plaintiff's own detention to classify the hospital as a state actor. Id. By contrast, in Rodr ques v. ___ _________ Furtado, 950 F.2d 805, 814 (1st Cir. 1991), we held that a _______ physician "functioned as a state actor" where he performed a body cavity search of the plaintiff pursuant to a search warrant. We justified our conclusion on the ground that the scope and motivation for the specific conduct occasioning the complaint "were established solely by the state's investigatory goals and justified solely by the search warrant." Id. at 814. ___ We conclude that to the extent that state-granted authority can justify a finding of state action, that authority must be connected to the aim of encouraging or compelling the specific complained-of conduct. Because we conclude that the district court correctly found that no state-linked financial or regulatory nexus compelled Defendants to act as they did, we find no state action under the nexus test. 2. Traditional Public Function Analysis  2. Traditional Public Function Analysis "[F]or a private actor to be deemed to have acted under -12- color of state law, it is not enough to show that the private actor performed a public function." Rockwell, 26 F.3d at 258. ________ Rather, "[t]he plaintiff must show that the private entity assumed powers 'traditionally exclusively reserved to the State.'" Id. (quoting Rodr ques, 950 F.2d at 813). The ___ _________ exclusive function test screens for situations "where a state tries to escape its responsibilities by delegating them to private parties." Id. at 258; see Johnson v. Pinkerton Academy, ___ ___ _______ _________________ 861 F.2d 335, 338 (1st Cir. 1988). If the convening of the AEELA's assembly or the election of its board are traditional, exclusively sovereign functions which have merely been delegated to private actors, then the state cannot escape responsibility for constitutional deprivations caused by private parties acting pursuant to the delegation. Rockwell, 26 F.3d at 258. ________ In Rendell-Baker, 457 U.S. at 352, the Supreme Court _____________ discussed the "public function" analysis of state action. The Court concluded that although the education of maladjusted high school students is a public function for which the state intends to provide services at public expense, that "legislative policy choice in no way makes these services the exclusive province of the State . . . . That a private entity performs a function which serves the public does not makes its acts state action." Id.; ___ see also Ponce, 760 F.2d at 381. ________ _____ Plaintiffs contend that for public interest purposes, the government of Puerto Rico has delegated to the AEELA the traditional activity of promoting savings among government -13- employees, and providing them benefits such as loans, insurance and medical services. We agree with Plaintiffs that providing such benefits to public employees probably does promote the public interest. However, these services cannot reasonably be characterized as the exclusive province of the State, since banks, credit unions, savings and loans associations, brokerage firms, mutual funds, and insurance companies traditionally have existed to promote savings, loans and health and other insurance. As a result, we conclude that Defendants cannot be found to have engaged in state action under the "traditional public function" test.  3. Symbiotic Relationship  3. Symbiotic Relationship  State action can be found by way of a symbiotic relationship. Under this test, a private party's acts "are attributable to the state only if the government 'has so far insinuated itself into a position of interdependence with [the private entity] that it must be recognized as a joint participant in the challenged activity . . . .'" Ponce, 760 F.2d at 381 _____ (quoting Burton v. Wilmington Parking Auth., 365 U.S. 715, 725 ______ ________________________ (1961)). While "one of the key factors in determining whether a symbiotic relationship exists is certainly whether the state shared in any profits made," the lack of a financial partnership is not necessarily dispositive. Rodr guez-Garc a, 904 F.2d at ________________ 98-99 (listing several factors relevant to finding "symbiotic relationship"). In Burton, the Court found state action where the state ______ -14- leased public property to a private restaurant owner, who maintained a racially discriminatory policy, acknowledged to be indispensable to the success of the venture. Burton, 365 U.S. at ______ 723-24. In contrast, there is no evidence that the government of Puerto Rico somehow profited from the allegedly discriminatory actions of Defendants. Even though the AEELA receives legally mandated funds from public employees, no contention has been made that this money becomes the property of the AEELA or the government. In fact, Plaintiffs have not disputed that, upon termination of employment, public employees receive back their funds. While the Puerto Rico Secretary of the Treasury does approve the investments made by the AEELA with these funds, Plaintiffs have not contended that these funds are somehow used to the benefit of the government of Puerto Rico, rather than invested at a market rate of return. Also, Plaintiffs have not even attempted to link the alleged election rigging to some financial gain to the government of Puerto Rico, in the way that the discrimination in Burton was linked to the state's returns ______ from the venture. Thus, whatever financial success the AEELA may achieve is not shared with the government of Puerto Rico. Similarly, while the lack of financial enrichment is not dispositive, and "[t]he test is one of interdependence and joint participation," we agree with the district court that Plaintiffs have failed to contest the proposition that the AEELA is essentially independent in the conduct of its daily affairs. And no attempt has been made to link the government of Puerto -15- Rico to the decisions of when to hold the Assembly and how to conduct Board elections. As a result, we conclude that no symbiotic relationship exists between the government of Puerto Rico and the AEELA. In passing, we observe that in the instant case, Plaintiffs have not premised their claim on a private party's specific act, directed by the government of Puerto Rico, which somehow benefits the government via a symbiotic relationship with the private actor. This point can be illustrated by comparison with the symbiotic relationship that led to a finding of state action in Schneider v. Colegio de Abogados de Puerto Rico, 565 F. _________ __________________________________ Supp. 963, 974, stay denied, 572 F. Supp. 957 (D.P.R. 1983), ___________ vacated on other grounds Romany v. Colegio de Abogados de Puerto _________________________ ______ _____________________________ Rico, 742 F.2d 32 (1st Cir. 1984) (holding that the district ____ court should have abstained from reaching the merits of the First Amendment claims until the Puerto Rico Supreme Court decided a pending controversy). In Schneider, the plaintiffs charged that _________ Puerto Rico laws forcing them to be members of Puerto Rico's integrated bar association violated their rights to free speech and free association, since those laws forced them to belong to, and financially support, an organization (the Colegio) which promoted ideological and political causes contrary to their personal beliefs. Id. at 965-66. The court found state action, ___ noting not only that Puerto Rico law required attorneys to maintain membership in the Colegio, but also emphasizing that required membership aided the Colegio's public function of -16- regulating lawyers, from which the government was found to benefit. Id. at 973-74. Essentially, the government of Puerto ___ Rico was found to be advantaged by the specific act on which the complaint was grounded, namely, forced membership in the Colegio. By contrast, plaintiffs in the instant case do not mount a facial challenge to the laws that create the AEELA or require that it hold elections. Instead, they argue that the AEELA's leadership committed discretionary acts of discrimination, and did so while exercising authority granted by the government of Puerto Rico. But plaintiffs fall short of Schneider in at least two ways. First, the conduct they complain _________ of -- discrimination -- is not specifically mandated by Puerto Rico law, as forced membership in the Colegio was for lawyers in Schneider. Unlike the plaintiffs in Schneider, Plaintiffs do not _________ _________ challenge conduct specifically directed by Puerto Rico law; for example, their forced membership in the AEELA or the requirement that the AEELA hold assemblies and elections. Instead, Plaintiffs complain of the manner in which the assembly and the ______ elections were held -- this manner is not directed by statute. ______ Second, Plaintiffs have failed to link these specific acts of discrimination in the holding of AEELA's assembly and elections to any symbiotic relationship by which the government profits from these specific discriminatory acts. No allegation has been made that the government of Puerto Rico is somehow advantaged by the alleged misconduct in AEELA's assembly or elections. By contrast, in Schneider, bar membership required by Puerto Rico _________ -17- law constituted the conduct complained of, and also was alleged to benefit the government of Puerto Rico, since compulsory membership made possible the Colegio's regulatory functions. As a result of these distinctions, we conclude that Schneider does _________ not avail Plaintiffs. CONCLUSION CONCLUSION To maintain a Section 1983 action, state action must be present. Because we conclude that, reading the pleadings in the best light for Plaintiffs, they can prove no set of facts that would implicate state action, the judgment of the district court is affirmed. affirmed. ________ -18-