104 F.3d 348
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
George A. HIGGINS, Plaintiff, Appellant,
v.
Eric EICHLER and Peter Dilullo, Defendants, Appellees.
 No. 96-1698.
 United States Court of Appeals, First Circuit.
 Dec. 17, 1996.
 
 Douglas G. Moxham, with whom Anthony E. Kilbridge and Lane Altman & Owens LLP were on brief, for appellant.
 Helen Mandel Braverman, with whom David L. Braverman, Fellheimer Eichen Braverman & Kaskey, Thomas C. O'Konski, and Cesari & McKenna were on brief, for appellant
 D.Mass.
 REVERSED.
 Before STAHL and LYNCH, Circuit Judges, and WOODLOCK,* District Judge.
 LYNCH, Circuit Judge.
 
 
 1
 The plaintiff, George Higgins, and the defendants, Eric Eichler and Peter DiLullo, are general partners in a number of real estate partnerships. Higgins, a "national" partner who had been involved in over ninety partnerships, retired from active management of the partnerships in 1988 but continues to own interests in several of the partnerships. After his retirement, Higgins' relationship with Eichler and DiLullo apparently soured. In August of 1995, Higgins sued his partners in the United States District Court for the District of Massachusetts on the theory that they had breached their fiduciary duties to him by implementing a scheme to prevent Higgins from receiving his share of the partnerships' proceeds. Higgins also sued Eichler and L.P. Corporation ("L.P."), a Pennsylvania close corporation formed by the partners for the purpose of performing accounting functions and cash flow management for the various partnerships, in the United States District Court for the Eastern District of Pennsylvania.
 
 
 2
 Defendants moved to dismiss the Massachusetts action, and asked, in the alternative, for this action to be transferred to the Pennsylvania court pursuant to 28 U.S.C. § 1404(a). Defendants argued that the complaint should be dismissed because, among other defects, it failed to state a claim upon which relief could be granted. According to defendants, the gravamen of plaintiff's complaint was that the value of his Individual Partnership Account ("IPA") was less than it should be. However, defendants asserted, the flow of funds to Higgins' IPA was regulated by a contract, the Netting Out Agreement ("NOA"), to which Higgins and L.P. were the only parties. Therefore, defendants argued, Higgins' claim could not run against Eichler and DiLullo, as they were not parties to Higgins' NOA.
 
 
 3
 The Massachusetts court dismissed the action for failure to state a claim.[1] See Fed.R.Civ.P. 12(b)(6). The court found that the alleged injury was not "within the scope of any particular real estate partnership," and instead was caused by the corporation, L.P. The court opined that no claim for breach of fiduciary duty owed to Higgins as a partner was stated. The court indicated that plaintiff might have a breach of contract action against L.P., which was a necessary party to such a claim, but noted that plaintiff had not offered any evidence that the Massachusetts federal court would have jurisdiction over L.P., a Pennsylvania corporation. We reverse and remand to the district court with instructions to transfer the case to the Eastern District of Pennsylvania.
 
 
 4
 Our review of the allowance of a motion to dismiss for failure to state a claim is plenary. See Barrios-Velasquez v. Asociacion de Empleados, 84 F.3d 487, 489-90 (1st Cir.1996). The allegations of the complaint are taken as true and all reasonable inferences are drawn in favor of Higgins. See id. We will affirm the dismissal only if it appears, to a certainty, that there is no set of facts upon which plaintiff may recover. See Roma Constr. Co. v. aRusso, 96 F.3d 566, 569 (1st Cir.1996).
 
 
 5
 The parties have largely argued Massachusetts law, without a full briefing as to whether Massachusetts or Pennsylvania law applies. Because the parties have pointed to no material differences between the law of Massachusetts and the law of Pennsylvania as to partners' fiduciary obligations, we look primarily to Massachusetts law.
 
 
 6
 It is abundantly clear that partners owe each other a fiduciary duty. See Wartski v. Bedford, 926 F.2d 11, 13-14 (1st Cir.1991) (surveying Massachusetts law). The question here goes to the extent of that duty. "[P]artners owe each other a fiduciary duty of 'the utmost good faith and loyalty.' " Id. at 13 (quoting Meehan v. Shaughnessy, 535 N.E.2d 1255, 1263 (Mass.1989)). " 'As a fiduciary, a partner must consider his or her partners' welfare, and refrain from acting for purely private gain.' " Id. at 13-14 (quoting Meehan, 535 N.E.2d at 1263).
 
 
 7
 Provisions of the Uniform Partnership Act have been adopted by Massachusetts, notably that:
 
 
 8
 Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct or liquidation of the partnership or from any use by him of its property.
 
 Mass. Gen. L. ch. 108A, § 21(1).[2]
 
 9
 Against these standards, we review the facts alleged, drawing all reasonable inferences for the plaintiff. We discuss only those facts alleged necessary to test whether a claim has been stated. From the allegations of the complaint, it would be reasonable to infer that the myriad of various real estate partnerships in which the parties invested were treated, for some purposes, as a single entity and that the participants regarded each other as partners. Higgins alleges that Eichler, as chairman of the partners' "Executive Committee," and assisted by DiLullo, exercised de facto control over the partnerships. The accounting functions of the partnerships in toto were performed by L.P, a corporation created for that purpose under the NOA. Each partner entered into a separate NOA with L.P. Pursuant to the NOA, partnership proceeds were paid into partners' IPAs.
 
 
 10
 In 1993, Eichler and DiLullo, as members of the Executive Committee, implemented a program called the "IPA Cleanup Program." The Cleanup Program generally operated for the benefit of active--as opposed to retired--partners. Under the program, uncollectible debts owed by insolvent partners to the partnerships were forgiven, and the resulting losses were allocated to the IPAs of solvent partners, thus allowing the active solvent partners to take tax deductions. Additional debt forgiveness adjustments were made to the partners' IPAs in 1994.
 
 
 11
 Higgins did not consent to these changes. The Cleanup Program was implemented anyway and $1.8 million in losses was allocated to Higgins' account. As a result, Higgins, rather than having a positive balance in his IPA and receiving income from his investments, was left with a negative balance and did not receive any partnership draws.
 
 
 12
 Higgins' complaint alleges that the IPA Cleanup Program was a self-dealing scheme by Eichler and DiLullo and constitutes a breach of their fiduciary duty as partners. Defendants contend that their fiduciary duties ended when the partnership income was transferred to L.P. and that, while plaintiff may have a cause of action against L.P., he has no claim of breach of fiduciary duty against them. The district court agreed with the defendants, holding that the defendants' actions were outside the scope of the partnership because the relevant acts, even if attributable to the defendants, were performed in their role as officers of L.P., an entity separate, in the district court's view, from the partnerships.
 
 
 13
 This is, in our estimation, too narrow a view of the allegations, as the record now stands unfocussed by factual development, and the law. It is reasonable to infer that the functions performed by L.P. were accounting functions previously performed by the partnerships themselves; that L.P. was established for the sole purpose of administering those functions; that L.P. simply received in partnership income and then distributed it out; and that L.P. was merely an agent of the partnerships. These inferences are supported by the NOA itself, which states that "Partner and Participants have selected [L.P.] as the business entity to conduct day to day operations, perform accounting functions and to assist in cash planning and cash flow management for the Enterprises." Higgins' NOA, although executed only by Higgins and L.P., is also expressly conditioned on all of the participants in the various partnerships signing identical agreements, and states that these agreements "shall be for the mutual benefit of such executing Participants, Agent, Partner and the other parties to such agreements." Plaintiff also alleges that L.P. was under the control of the defendants and did what they wanted. The NOA itself can be read to suggest that L.P. on its own had no authority to execute a scheme such as the IPA Cleanup Program. It was pursuant to that scheme that plaintiff was, he alleges, deprived of partnership income owed to him. It thus may be inferred that L.P., rather than acting as a separate entity with regard to the alleged scheme, was merely an arm or instrumentality of the partnerships.
 
 
 14
 The Supreme Judicial Court of Massachusetts recently upheld a jury verdict in a case involving a claim that two law partners had deprived the plaintiff partner of his fair share of partnership proceeds by choosing unfair methods of accounting for partnership profits. Starr v. Fordham, 648 N.E.2d 1261 (Mass.1995). The court recognized the potential for self-dealing where certain partners in essence control the distributions to another partner:
 
 
 15
 The founding partners were responsible for dividing the partnership's profits and assigning to each partner his respective share of the profits. Thus, the founding partners had some self-interest in designating each partner's respective share of the profits because the percentage of profits which they were assigning to the other partners had a direct effect on their own percentage of the profits.
 
 
 16
 Id. at 1265.
 
 
 17
 Accordingly, the court placed the burden of proving that the distribution of profits was fair on the defendants. Id.
 
 
 18
 We are unprepared to say, in the context of a motion to dismiss, that Massachusetts law would never recognize a claim for breach of fiduciary duty where, as described above, the instrument used to deprive a partner of his partnership income was simply an arm of the partnership, and was under the control of the defendant partners.
 
 
 19
 We think it better that the questions in this case be resolved in the context of further factual development. As Justice Frankfurter stated in SEC v. Chenery Corp., 318 U.S. 80 (1943):
 
 
 20
 [To] say that a man is a fiduciary only begins the analysis; it gives direction to further inquiry. To whom is he a fiduciary? What obligations does he owe as a fiduciary? In what respect has he failed to discharge these obligations? And what are the consequences of his deviation from duty?
 
 
 21
 Id. at 85-86. Therefore, we reverse the district court's grant of defendants' motion to dismiss.
 
 
 22
 Plaintiff now joins defendants in asking that this case be transferred to the Pennsylvania district court. The action filed by Higgins in that court against Eichler and L.P. is substantially related to the present action. "The pendency of related litigation in another forum is a proper factor to be considered in resolving choice of venue questions," Codex Corp. v. Milgo Electronic Corp., 553 F.2d 735, 739 (1st Cir.), cert. denied, 434 U.S. 860 (1977), and may be decisive where, as here, neither party raises convenience objections. See id. Additionally, transfer will resolve the various jurisdictional issues raised by defendants in their motion to dismiss.
 
 
 23
 Accordingly, on remand, the district court should transfer this action to the United States District Court for the Eastern District of Pennsylvania as a companion case to the suit Higgins has already filed there.
 
 
 24
 Reversed and remanded with instructions.
 
 
 
 *
 Of the District of Massachusetts, sitting by designation
 
 
 [1]
 The district court declined to treat the motion as one for summary judgment although the parties submitted additional materials and affidavits. Plaintiff complains that the district court selectively chose certain facts submitted by defendants to support the dismissal, while ignoring other facts in the supplemental submissions which were favorable to his claim. Because we resolve the issues presented on other grounds, we find it unnecessary to resolve this claim of procedural error. Plaintiff does not object to this court's consideration of the NOA, which is referenced in the complaint and is central to it. See Fudge v. Penthouse Int'l, Ltd., 840 F.2d 1012, 1015 (1st Cir.), cert. denied, 488 U.S. 821 (1988)
 
 
 [2]
 Pennsylvania law contains an identical provision. See 15 Pa. Cons.Stat. Ann. § 8334(a)