Perkins v. Londonderry Basketball     CV-98-171-B     02/18/99

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**


Terri Perkins,
as mother and next friend
of Stacey Perkins, a minor,
    Plaintiff,

v.                                              Civil No. C-98-171-B

Londonderry Basketball Club,
    Defendant


**O R D E R**

Terri Perkins brings this action on behalf of her daughter, Stacey Perkins. Perkins alleges that the Londonderry Basketball Club denied her daughter equal protection of the law in violation of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983 by barring Stacey's participation in an all-boys basketball tournament.[1] The Club has moved for summary judgment, pursuant to Fed. R. Civ. P. 56(a), claiming that its actions with respect to Stacey do not amount to state action for purposes of

---

[1]  Perkins also alleges that the Club violated Stacey's rights under Article 2 of the New Hampshire Constitution and N.H. Rev. Stat. Ann. § 354-A:16, which bars discriminatory practices in public accommodations.

the Fourteenth Amendment or give rise to § 1983 liability.[2]
Perkins objects to the Club's motion. For the reasons set forth
below, I find that there is no state action and, accordingly,
grant the Club's motion for summary judgment.

## FACTS

At the time Perkins commenced this litigation, her daughter
was 10 years old. Stacey is a resident of Seabrook, New
Hampshire, where she plays many sports, including basketball.
The Town of Seabrook does not have a girls basketball league.
Seabrook does, however, have a league consisting of five coed
basketball teams. In the winter of 1998, Stacey and four other
girls played alongside boys on the Red Devils Seabrook
Recreational basketball team. In March, Stacey was one of two
girls selected from the five coed teams to play for the town's
All Star Team. The All Star Team subsequently entered the 10th
Annual Londonderry Tournament. The tournament, held in

---

[2] The Equal Protection Clause of the Fourteenth Amendment
to the United States Constitution states that "No State shall . .
. deny to any person within its jurisdiction the equal protection
of the laws." 42 U.S.C. § 1983 provides that "Every person who,
under color of any statute, ordinance, regulation, custom, or
usage, of any State or Territory, subjects, or causes to be
subjected, any citizen of the United States or other person
within the jurisdiction thereof to the deprivation of any rights,
privileges, or immunities secured by the Constitution and laws,
shall be liable to the party injured in an action at law, suit in
equity, or other proper proceeding for redress."

Londonderry, New Hampshire, is sponsored by the Londonderry Basketball Club. The Club is a private volunteer organization run by Londonderry residents.

The Club's tournament is open to any team consisting of players from the same town. The Club sponsors separate week-long tournaments for girls and boys. Girls are not allowed to play on the boys' teams or in the boys' tournament and, likewise, boys cannot play on girls' teams or in the girls' tournament. The Club does not sponsor a coed tournament. Because the Seabrook All Star Team entered the boys' tournament, the Club barred Stacey from participating. She traveled with her team to the first game, but was not permitted to play. Stacey's coach subsequently withdrew the All Star Team from the tournament.[3]

The Club was formed in October 1990 to offer children in Londonderry an opportunity to compete in an organized traveling basketball league.[4] The Club is a private, non-governmental,

_____

[3] Perkins initially sought a temporary restraining order enjoining the Club from barring Stacey's participation in the tournament. Because the team withdrew from the competition, I found, in an order dated March 27, 1998, that the TRO issue was moot. Perkins currently seeks a permanent injunction, damages, costs and attorneys' fees, noting that Stacey could make the Seabrook All Star Team and be barred from the Londonderry tournament again in 1999.

[4] Prior to the Club's formation, there were at least two groups providing basketball opportunities for the town's

-3-

charitable corporation organized under the laws of the State of New Hampshire. The Club was granted preliminary tax-exempt status as a publicly supported organization under § 501(c)(3) of the Internal Revenue Code in April 1998.

The Club does not receive any direct funding from the Town of Londonderry or any other governmental body. Rather, the Club survives on registration fees and fundraisers. The annual tournament is the Club's largest fundraiser. A portion of the tournament proceeds provides scholarships to Londonderry students. The Club has also made donations to the Town's schools in the form of new uniforms, baskets, backboards, nets, court improvements, and other equipment. Since 1991, the Club has donated more than $22,000 in scholarships, uniforms, and equipment to the Town. (Pl.'s Ex. 8). Additionally, the Club's Articles of Agreement provide that upon disbanding, the Club's assets will be distributed to the Town of Londonderry. (Pl.'s Ex. 19).

---

children. The Club was formed, in part, to bring the groups together in an effort to avoid competition for gymnasium time and participants. (Pl.'s Ex. 5, Crosbie Dep. at 7; Pl.'s Ex. 6, Psaledas Dep. at 23-25). Currently, there is at least one other traveling basketball program in Londonderry for boys. (Pl.'s Ex. 5, Crosbie Dep. at 24-25).

At least two members of the Town's Recreation Commission are Club volunteers. (Pl.'s Ex. 20). Several of the Club's volunteers also are associated with the Londonderry recreational basketball program. This program is not affiliated with the town but it was at one time run by the town's recreation director, Arthur Psaledas. Psaledas currently assists the Club by scheduling the use of school gymnasiums, sometimes giving priority to the Club over adult groups in order to schedule the tournament. Like other private groups that use school facilities, the Club uses the property at no cost, but must pay for a private security service when the schools are not open. The Town does not require the Club to provide its own insurance. The Club also holds its meetings at the Town's high school.

The Club, as well as other private groups, must apply to use Town facilities. Psaledas testified that he, the high school athletic director, the school department's business administrator and representatives of groups vying for gymnasium and field time meet occasionally to set a use schedule, although the ultimate decision to grant or deny use lies with the Town. Psaledas typically submits the Club's application. In 1996, in an effort to prioritize and coordinate scheduling, the Recreation Commission established "sanctioning standards" for prospective

users.[5]  The Club is sanctioned under the Commission's standards.
The Town does allow non-sanctioned sports leagues to use its
facilities.  (Pl.'s Ex. 6, Psaledas Dep. at 38; Def.'s Ex. 1,
Psaledas Aff.; Pl.'s Ex. 5, Crosbie Dep. at 22-24).

## STANDARD

Summary judgment is appropriate "if the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with affidavits, if any, show that there is no genuine
issue as to any material fact and that the moving party is
entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).
A "genuine" issue is one "that properly can be resolved only by a
finder of fact because [it] may reasonably be resolved in favor
of either party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
250 (1986); accord Garside v. Osco Drug, Inc., 895 F.2d 46, 48
(1st Cir. 1990).  A "material issue" is one that may "affect the

---

[5]  The Recreation Commission's Group Sanctioning Standards
require that: (1) 60 percent of the participants are Londonderry
residents; (2) coaches and supervisors are residents of
Londonderry; (3) no other sanctioned program providing the same
or similar service exists; (4) the program is permanent; (5) the
program is well planned and properly supervised; (6) the group
demonstrates a proper framework for leadership and people to
provide the leadership; (7) the group has no outstanding
financial obligations that would hinder its progress; and (8) the
group complies with the rules of the school district and
recreation commission.  (Pl.'s Ex. 10).

outcome of the suit . . . ." <u>Anderson</u>, 477 U.S. at 248.  The burden is upon the moving party to aver the lack of a genuine, material factual issue, <u>see</u> <u>Finn v. Consolidated Rail Corp.</u>, 782 F.2d 13, 15 (1st Cir. 1986), and the court must view the record in the light most favorable to the non-movant, according the non-movant all beneficial inferences discernable from the evidence. <u>See</u> <u>Oliver v. Digital Equip. Corp.</u>, 846 F.2d 103, 105 (1st Cir. 1988).  If a motion for summary judgment is properly supported, the burden shifts to the non-movant to show that a genuine issue exists.  <u>See</u> <u>Donovan v. Agnew</u>, 712 F.2d 1509, 1516 (1st Cir. 1983).  I apply these standards to the issues the parties raise before me.

## DISCUSSION

Here, the Club argues that summary judgment is appropriate because its policy of barring girls from participating in the boys' tournament is not state action for purposes of Fourteenth Amendment or § 1983 liability.  In support of its motion, the Club has produced the affidavits of Recreation Director Psaledas and Club Director Alan Crosbie, as well as a copy of the Club's Articles of Agreement.  Both Psaledas and Crosbie state that the Club is a private entity, over which the Town exerts no influence

or control. Specifically, both Psaledas and Crosbie state that neither the Town nor any of its subdivisions reviewed or approved the Club's tournament rules.

A private actor cannot be held liable for an equal protection violation unless his actions can be "fairly attributable to the State." Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982). Similarly, a private actor is not liable for a constitutional deprivation of a plaintiff's rights under § 1983 unless he acted "under color of state law." See Rodriguez-Garcia v. Davila, 904 F.2d 90, 94 (1st Cir. 1990)(citing Flagg Bros. Inc. v Brooks, 436 U.S. 149, 155 (1978)). While the inquiry into the state action requirement is necessarily fact-based, it can properly be resolved at the summary judgment stage of litigation. See id. (citing Lugar, 457 U.S. at 939).

State action may be either direct or indirect. See id. at 95; see also Barrios-Velazquez v. Asociacion de Empleados del Estado Libre Asociado de Puerto Rico, 84 F.3d 487, 491 (1st Cir. 1996). Here, there is no direct state action because the Club is a private organization, neither officially controlled by nor officially connected to the Town of Londonderry. See Barrios-Velazquez, 84 F.3d at 492 (no direct state action where government neither subsidized private entity nor appointed its

directors). Thus, Perkins must establish that the Club's action constitutes "indirect state action." See id. at 491.

In determining whether the Club's action is indirect state action, I must apply a three-part analysis applicable to both the Fourteenth Amendment equal protection and § 1983 questions. See Blum v. Yaretsky, 457 U.S. 991, 1004-05 (1982); Barrios-Velazquez, 84 F.3d at 491 (citing Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982)). I must determine whether there was:

> (1) [a]n elaborate financial or regulatory nexus between [the Club] and [the Town of Londonderry] which compelled [the Club] to act as [it] did, (2) an
>
> assumption by [the Club] of a traditional public function; or (3) a symbiotic relationship involving the sharing of profits.

Barrios-Velazquez, 84 F.3d at 493 (quoting Rodriguez-Garcia, 904 F.2d at 96); see also Blum, 457 U.S. at 1004-05. Because satisfaction of any one of the three tests quoted above requires that I find indirect state action and deny the Club's motion for summary judgment, I consider each test in turn. See id.

A.    **Nexus Analysis**

A sufficiently close nexus exists between the government and a private party to support a finding of state action where the government exercised such power or encouragement that the alleged violation must be deemed to be the conduct of the government

itself.  See Blum, 457 U.S. at 1004; Barrios-Velazquez, 84 F.3d at 493.  The focus is on the government's connection to the alleged violation, not its connection to the private party itself.  See Barrios-Velazquez, 84 F.3d at 493 (citing Blum, 457 U.S. at 1004); see also Yeo v. Town of Lexington, 131 F.3d 241, 253-54 (1st Cir. 1997), cert. denied, 118 S.Ct. 2060 (1998)(insufficient nexus between town and school yearbook, which refused to publish advertisement counseling sexual abstinence, where there was "no interplay between the decision not to publish the advertisement and the state's provision of financial and faculty support").

Perkins argues that the Recreation Commission's sanctioning requirements, the Town's policy for allocating gym time, and the fact that the Town shares in the Club's profits establish a sufficiently close nexus to constitute state action.  Perkins fails, however, to link any one of these factors to the alleged violation she complains of.  While the sanctioning requirements, gym scheduling, and the Club's donations to the town[6] may

_____

[6] As I more fully discuss below in both the traditional public function and the symbiotic relationship analyses, the fact that the Club donates a portion of the tournament proceeds to the Town is insufficient to establish state action.  See Burton v. Wilmington Parking Authority, 365 U.S. 715, 724 (1961); Barrios-Velazquez, 84 F.3d at 494-95.

indicate that the Club and Town have an on-going and mutually beneficial relationship, these facts are irrelevant for purposes of the nexus analysis except insofar as they establish government coercion or encouragement of the alleged violation. See Barrios-Velazquez, 84 F.3d at 493; see also Blum, 457 U.S. at 1005 (no state action where state did not influence private nursing homes' decisions to discharge or transfer patients pursuant to Medicaid regulations); Rendell-Baker, 457 U.S. at 841 (no state action where state regulation of private school did not compel or influence school's decision to discharge plaintiffs).

A mere governmental grant of authority allowing a private party to exist and act, without more, is insufficient to establish state action. See Barrios-Velazquez, 84 F.3d at 493 (citing Rockwell v. Cape Cod Hospital, 26 F.3d 254, 258 (1st Cir. 1994)). Rather, the grant of authority must be linked to a coercion or encouragement of the alleged violation. See id. ("state-granted authority . . . must be connected to the aim of encouraging or compelling the specific complained-of conduct"). Here, Perkins seems to argue that the sanctioning requirements are the functional equivalent of a governmental grant of authority because the Town could bar the Club from using its facilities if the Club failed to meet its requirements, rendering

the Club powerless to operate.[7]  Perkins presents no evidence, however, that the Town, through its sanctioning requirements, either coerced or encouraged the Club to establish a single-sex tournament rule.  Rather, the requirements are simply designed to ensure that groups using Town facilities are primarily run by and for Town residents, are well-managed, and are financially solvent.  (Pl.'s Ex. 10).

Similarly, the scheduling of gym time itself cannot logically be tied to the Club's decision to operate single-sex tournaments.  There is no allegation, nor evidence, that the town or school department required the Club to establish or enforce such a rule in exchange for gym time.  See, e.g., Yeo, 131 F.3d at 251-52 (no state action where private parties made complained-of decision free from state control); Ponce v. Basketball Federation of the Commonwealth of Puerto Rico, 760 F.2d 375, 378-79 (1st Cir. 1985)(no state action where private party established rules absent state control or involvement).

Perkins also claims that the Town, through Psaledas, could have enforced the Club's tournament rules.  Relying on the First

_____

[7]  It is not clear that the Club would suffer such demise if it did not meet the sanctioning requirements as there is evidence that the Town does, in fact, allow non-sanctioned groups to use its facilities.  (Pl.'s Ex. 6).

-12-

Circuit Court of Appeals decision in <u>D'Amario v. Providence Civic Center Authority</u>, Perkins argues that such possible intervention on the part of the Town constitutes a nexus between the Town and the Club sufficient to establish state action. <u>See</u> 783 F.2d 1, 3 (1st Cir. 1986)(state action where public employees enforced private parties' "no-camera rule" during concerts at public facility). She further argues that the Town's failure to intervene and challenge the Club's rule supports a finding of state action. To support this argument, Perkins notes that Psaledas testified in his deposition that he could intervene during the tournament if he feared that school property would be damaged or destroyed.

Perkins' argument is unpersuasive for several reasons. First, in <u>D'Amario</u>, there was ample evidence that state employees actually <u>did</u> enforce the private rule challenged by the plaintiff. <u>Id.</u> Here, there is no such evidence. Moreover, there is no evidence that the Town could, or would, either enforce or challenge the Club's rules. Psaledas testified that he would <u>only</u> intervene in order to protect the Town's property, <u>not</u> to enforce or challenge a Club rule:

> Only -- the only way that I would be -- would intercede is if there was a destruction of property. If there's something going on in that gymnasium that would harm the court -- you had a team that came in that didn't

-13-

have basketball shoes on and they were on a wood floor
-- then I would intercede, if I were there, and say --
But other than that, as far as the operation of the
tournament, no.

(Pl.'s Ex. 6, Psaledas Dep. at 34).  Finally, the government's "mere approval or acquiescence in the initiatives of a private party" is insufficient to justify a finding of state action. Blum, 457 U.S. at 1004-05; see also Ponce, 760 F.2d at 379.  The fact that the Town did nothing to stop the Club's alleged discrimination, as appears to be the case here, does not establish a nexus between the two for state action purposes.  See id.  Indeed, it more likely establishes the lack of such a nexus. See, e.g., Yeo, 131 F.3d at 251, n.9 (evidence that school officials neither could nor did control students' decision not to publish advertisement supported finding of no state action).

There is no allegation, nor evidence, that the Town of Londonderry coerced or encouraged the Club to establish and enforce its tournament rules.  Nor is there evidence that the Town or its agents actually did, could, or would enforce these rules.  Thus, I find that there is no state action under the nexus test.

B.    **Traditional Public Function Analysis**

Perkins argues that the Club's assumption of some of the duties of the Londonderry recreational basketball program and its

-14-

donations to the Town support a finding of state action under the public function analysis.  I disagree.

The purpose of the public function analysis is to determine whether "a state [is trying] to escape its responsibilities by delegating them to private parties." Rockwell, 26 F.3d at 258. The mere fact that a private party performed a public function is insufficient to establish state action under this analysis. See Rendell-Baker, 457 U.S. at 852; Barrios-Velazquez, 84 F.3d at 493. Rather, the plaintiff must show that the private party "assumed powers 'traditionally exclusively reserved to the State.'" Barrios-Velazquez, 84 F.3d at 494 (quoting Rodriques v. Furtado, 950 F.2d 805, 813 (1st Cir. 1991)). Courts have repeatedly emphasized the significance of exclusivity. See, e.g., Rendell-Baker, 457 U.S. at 842 ("[T]he relevant question is not simply whether a private group is serving a 'public function' . . . [but] whether the function performed has been 'traditionally the *exclusive* prerogative of the State.'"); Barrios-Velazquez, 84 F.3d at 494 (where other non-governmental entities provided same or similar public service, private entity does not engage in traditional public function).

Here, the Club did not assume a traditional public function. Evidence in the record establishes that private groups offered

basketball programs prior to the Club's formation.  Indeed, the Londonderry recreational basketball program continues to provide instruction, albeit with help from Club volunteers.  The recreational program is not a Town organization.  There is also a private boys traveling team based in Londonderry.  Thus, the Club's programs "cannot reasonably be characterized as the exclusive province of the State."  Barrios-Velazquez, 84 F.3d at 494 (emphasis added).

Perkins also seems to argue that, because the school is ultimately responsible for purchasing uniforms and equipment for the school's teams, the Club's donations to the school system constitute a traditional public function sufficient to establish state action.  This argument is neither persuasive nor logically sound.  That the Club, on its own initiative, donates to the schools is laudable, but it in no way creates a connection between the two for purposes of Fourteenth Amendment or § 1983 liability.  To hold otherwise could subject any and all charitable groups and individuals that make donations to state actors to Fourteenth Amendment and § 1983 liability for their private actions simply by virtue of their philanthropy.  Such a result is not only unreasonable, it would also abrogate the entire purpose of the state action requirement.  See, e.g.,

<u>Lugar</u>, 457 U.S. at 936 ("Careful adherence to the 'state action' requirement preserves an area of individual freedom by limiting the reach of federal law and federal judicial power.").

**C.    <u>Symbiotic Relationship Analysis</u>**

A private party's actions may also constitute state action where the state "has so far insinuated itself into a position of interdependence with [the private party] that it must be recognized as a join participant in the challenged activity."[8] <u>See</u> <u>Burton v. Wilmington Parking Auth.</u>, 365 U.S. 715, 725 (1961); <u>Barrios-Velazquez</u>, 84 F.3d at 494; <u>Ponce</u>, 760 F.2d at 381. While a financial relationship between a private party and the state

---

[8]   Plaintiff's reliance on <u>Fortin v. Darlington Little League</u> is unpersuasive. 514 F.2d 344, 347-48 (1st Cir. 1975)(finding symbiotic relationship between city and little league sufficient to establish state action). First, <u>Fortin</u> is of questionable precedential value as it was decided years before the Supreme Court handed down its decision in <u>Rendell-Baker</u>. In <u>Rendell-Baker</u>, the Court noted that a key factor in the symbiotic relationship analysis is whether the state profited from the private actor's discriminatory conduct. <u>See</u> <u>Ponce</u>, 760 F.2d at 382 (citing <u>Rendell-Baker</u>, 457 U.S. at 843). Here, there is no evidence that the Town of Londonderry profited from the Club's action. Furthermore, <u>Fortin</u> is easily distinguished on the facts. In <u>Fortin</u>, the City of Pawtucket built and maintained baseball diamonds specifically for the Little League's use. 514 F.2d at 347. The league used the fields to the virtual exclusion of the general public during the baseball season. <u>See</u> <u>id.</u> Here, the Club "shares the [gymnasiums] with other teams and other sports, the courts were not constructed for the exclusive benefit of the [Club], nor were they laid out or maintained to the [Club's] specifications." <u>Ponce</u>, 760 F.2d at 382 n.5.

-17-

may indicate a symbiotic relationship, its existence or lack thereof is not dispositive. See Rodriguez-Garcia v. Davila, 904 F.2d 90, 98-99 (1st Cir. 1990); Barrios-Velazquez, 84 F.3d at 494. Rather, the symbiotic relationship inquiry encompasses a number of factors, including the sharing of profits, which focus on interdependence and joint enterprise rather than financial enrichment. See Rodriguez-Garcia, 904 F.2d at 98-99. What matters is that the state benefitted from the alleged wrongdoing. See Barrios-Velazquez, 84 F.3d at 495 (no state action where government neither mandated nor profited from private entity's discriminatory conduct); cf., Burton, 365 U.S. 715, 723-24 (1961)(state action where government benefitted from private restaurant's discriminatory policy). Discretionary acts of discrimination committed by a private body under authority granted by the government do not rise to the level of a symbiotic relationship for constitutional or § 1983 purposes absent proof the government mandated or profited from those acts. See Barrios-Velazquez, 84 F.3d at 494-95.

Here, the Town of Londonderry does not benefit from the Club's tournament rules. The Town does benefit indirectly from the tournament itself, through the Club's donations to the schools. Perkins makes no allegation nor offers any proof that,

-18-

absent a single-sex tournament rule, the Club would take in, and thus donate, less money to the Town.  Cf. Burton, 365 U.S. at 724 (state action where private restaurant in lease-agreement with state claimed it would lose business without racially discriminatory policy, thus earning less profit for the state). Thus, I find that there is no symbiotic relationship between the Town and Club for purposes of establishing state action.

## CONCLUSION

For the foregoing reasons, I find that there is no state action for purposes of Fourteenth Amendment equal protection or § 1983 liability.  Therefore, I must grant Defendant's motion for summary judgment (document no. 11) on Plaintiff's Fourteenth Amendment and § 1983 claims.[9]  Having disposed of the federal claims, I decline to exercise my discretion to retain supplemental discretion over Perkins' remaining state claims

---

[9]  In granting defendant's motion for summary judgment, I do not intend to indicate support for its decision to categorically exclude girls from the boys' tournament.  The recent success of Olympic champion Tara Mounsey who won a gold medal as part of the United States Women's Olympic hockey team after having starred on a state championship boys' high school team demonstrates how both boys and girls can benefit when issues such as plaintiff raises here are dealt with flexibly by sports authorities.  I have ruled against plaintiff not on the substance of her claim, but rather because I have concluded that defendant did not engage in state action when it excluded plaintiff from the tournament.

(Counts III and IV).  Counts III and IV of Perkins' complaint are dismissed without prejudice to her right to pursue them in state court.  <u>See</u> 28 U.S.C. § 1367(c)(3); <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 726 (1966).

SO ORDERED.


_____
Paul Barbadoro
Chief Judge


February   , 1999

cc:  Linda S. Johnson, Esq.
     Joseph L. Hamilton, Esq.